295 N.J. Super. 498 (1996)
685 A.2d 508
CAROLYN L. WALLES, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
PETER P. WALLES, DEFENDANT-APPELLANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 1996.
Decided December 4, 1996.
*502 Before Judges MUIR, Jr., KLEINER and COBURN.
Saverio R. Principato, P.C., attorney for appellant/cross-respondent.
*503 Forkin, McShane, Manos & Rotz, P.A., attorneys for plaintiff-respondent/cross-appellant (Amanda W. Figland, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Out of this appeal and cross-appeal from a final order in the Family Part regarding plaintiff's motions to enforce litigant's rights and defendant's cross-motion to reduce his alimony and child support obligations, emerges an issue of first impression discussed within section VIII of this opinion: whether the Family Part may order a payer of alimony to disclose his (her) income periodically in order to assist an ex-spouse in future applications to reinstate the original alimony award. We conclude that the Family Part may entertain such a request and grant appropriate relief. Our holding applies to those instances where a court, by its modification order, has reduced a prior award of alimony or where the court has reduced the amount of alimony negotiated by the parties and incorporated in a final judgment of divorce.

I
Plaintiff Carolyn Walles and defendant Peter Walles negotiated a property settlement agreement which was subsequently incorporated into a judgment of divorce. During the negotiations, both parties were represented by counsel. This present action arose when plaintiff filed a motion to enforce litigants' rights pursuant to R. 1:10-3. Plaintiff alleged that defendant had failed to comply with those provisions of the property settlement agreement that defined his obligations to pay permanent alimony to plaintiff and child support for Jeffrey, the only child of the marriage.
Under the terms of the property settlement agreement dated November 11, 1990, defendant agreed to pay "$17,000 per month as indefinite term alimony, not rehabilitative in nature." Additionally, defendant's child support obligation was fixed at $1,500 per month commencing November 1, 1990. The agreement provided, in part:

*504 The extent of Peter's ongoing obligation, if any, to provide child support to Carolyn for Jeffrey following high school shall be subject to renegotiation at that time taking into account whether and where Jeffrey attends college, the costs associated therewith, and where Jeffrey resides both during the academic year as well as during vacation periods.
In addition to child support, the agreement also required defendant to pay all "sums as shall be reasonably necessary for payment of tuition, room and board, book expenses and reasonable travel costs so as to enable Jeffrey to attend college." The agreement also provided that defendant had the right to approve the selection of the college and to participate in the selection process.
Plaintiff's initial motion was granted, and defendant paid in full those arrears owed to plaintiff on his alimony and child support obligations. The court reserved decision on plaintiff's application for counsel fees.
After plaintiff's initial motion, the court was asked on five additional occasions to enforce plaintiff's rights. The motion judge was also asked, on a cross-motion filed by defendant, to reduce or terminate the original alimony and child support obligations.
As discussed in greater detail infra, the motion judge enforced plaintiff's rights by invading defendant's only attachable property, his pension plan. This pension had been equitably divided when the parties were divorced. The judge also held a plenary hearing to determine if, in fact, there was a change of circumstances warranting a reduction in alimony and child support. The motion judge concluded that, because of a substantial reduction in defendant's income, reductions in both alimony and child support were warranted. Both reductions were made retroactive to January 1993. In a supplemental opinion, the judge awarded both counsel fees and costs to plaintiff.
Plaintiff moved for reconsideration of the judge's final order. Specifically, plaintiff asked the court to reconsider the retroactivity of the reductions in both alimony and child support. Additionally, plaintiff requested that the court establish a mechanism which would require defendant to disclose his future income to *505 plaintiff on a regular basis. Such a mechanism would aid plaintiff in any future application to reinstate the original amounts of alimony and child support as encompassed in the final divorce judgment. The motion judge refused to reconsider his final order as to retroactivity and also refused to grant plaintiff's request to create an automatic discovery mechanism.
Defendant, Peter Walles, appeals from the terms of the final order of modification. Defendant contends that the motion judge erred in: (a) not sufficiently reducing the amount of alimony and child support; (b) ordering the invasion of defendant's pension plan as a mechanism to satisfy arrears owed to plaintiff; (c) awarding plaintiff counsel fees and expert costs incurred in her post-divorce motions to enforce litigant's rights including fees and costs incurred in the post-judgment plenary hearing; and (d) requiring defendant to pay $2,500 to defray educational expenses incurred by Jeffrey Walles while attending college during the summer term of 1993.
We affirm each component of the various orders encompassed within this appeal but reverse that component of the order which reduced defendant's child support obligation retroactive to January 1993. We also reverse that portion of the order which denied plaintiff the right to receive periodically information regarding defendant's future income. We remand to the trial court for the entry of an order consistent with this opinion which will establish an equitable mechanism enabling plaintiff to monitor defendant's future income.

II
Due to the number of proceedings which led to the plenary hearing which, in turn, resulted in the reduction of alimony and child support, we deem it necessary to discuss the entire post-divorce procedural history in greater detail.
After the entry of the judgment of divorce on November 13, 1990, defendant fell into arrears on his alimony payments. This led to plaintiff's first motion to enforce litigant's rights, returnable *506 September 25, 1992. An order was entered on October 19, 1992, which required defendant to pay all of the then-outstanding alimony arrears. The judge reserved decision on plaintiff's request for counsel fees.
Although defendant apparently complied with the October 19, 1992, order, he once again became delinquent in his alimony and child support payments. Plaintiff filed her second motion to enforce litigant's rights on April 7, 1993. This motion was argued on May 7, 1993. The plaintiff's motion and supporting pleadings indicated that defendant at that time was $26,000 in arrears on alimony and $4,800 in arrears on child support.
When the parties appeared in court on May 7, 1993, plaintiff's counsel correctly represented that as of June 1, 1993, assuming defendant had not made any additional payments, defendant's total arrears on both alimony and child support would total $65,300. Prior to the return date of plaintiff's motion, defendant filed a cross-motion seeking to reduce his alimony and child support obligations.[1]
At the May 7, 1993, hearing, the motion judge determined that defendant's pleadings, as then filed, failed to demonstrate a substantial change in defendant's income. It is implicit in the colloquy between the motion judge and defendant's counsel that defendant's application for a modification of the judgment of divorce would be continued to a future date, affording plaintiff an opportunity to serve interrogatories and to depose defendant. In the interim, defendant was ordered to pay all outstanding arrears. The judge did not establish a specific method for the payment of *507 the arrears, nor did the judge identify the source that defendant was to use to comply with the enforcement order.
Although the judge intimated that it may be necessary to enforce litigant's rights by a levy, including a possible levy upon defendant's vested pension, the court did not in fact order an invasion of that pension plan. The judge again reserved any decision on plaintiff's counsel fee request, which included a request for counsel fees not awarded on October 19, 1992.
Thereafter, defendant's counsel prepared a "Qualified Domestic Relations Order," pursuant to N.J.S.A. 2A:34-23. This order provided, in part, for the payment of $65,750 to plaintiff from defendant's existing pension plan. The proposed order was consented to by plaintiff's counsel and was then submitted to and executed by the motion judge on July 16, 1993.
On that same date, plaintiff filed another motion, returnable August 6, 1993, seeking enforcement of litigant's rights. Plaintiff's motion was based on defendant's failure to pay his alimony and child support obligation due on July 1, 1993. The motion also specifically addressed defendant's alleged refusal to pay Jeffrey's summer school expenses. The motion was returnable on August 6, 1993.
In plaintiff's pleadings she certified that Jeffrey had entered the Berklee School of Music in September 1992. Shortly after entering school, Jeffrey needed an emergency appendectomy. Due to the appendectomy, Jeffrey withdrew from classes for the fall semester. Defendant received a full refund for all monies paid to the college for the fall semester. Jeffrey re-enrolled as a student at the start of the spring semester and planned to attend school during the 1993 summer term in order to take those courses which he had been unable to complete due to his medical problems.
In response to plaintiff's motion, defendant filed a cross-motion seeking to terminate his alimony obligation and to reduce his child support obligation.
*508 On August 6, 1993, defendant was ordered to pay $38,000  his obligation for July and August of 1993.[2] Consistent with the prior consent order, the judge ordered that a "Qualified Domestic Relations Order" be prepared. Thereafter, an appropriate order was submitted and executed September 2, 1993. Defendant's original motion seeking a modification of the judgment of divorce and defendant's cross-motion seeking termination of alimony and a reduction in child support were both continued pending the completion of discovery and the scheduling of a plenary hearing.
On October 29, 1993, plaintiff filed another enforcement action after not receiving alimony and child support for September and October. The matter was ultimately argued December 10, 1993, at which time defendant's arrears totalled $72,000.[3]
Plaintiff was again required to file a similar enforcement proceeding on February 3, 1994, which resulted in another enforcement order requiring the payment of $34,000. A renewed cross-motion by defendant seeking relief from the judgment of divorce was again continued as a plenary hearing was scheduled to commence on March 15, 1994.
Although the plenary hearing did in fact begin that day, it was not completed until June 15, 1994. On April 14, 1994, during the delay between trial dates, plaintiff filed her last enforcement action. On May 9, 1994, defendant was ordered to pay $15,500 of arrears and $1,500 in summer school tuition. The judge specifically reserved his decision respecting the balance of arrears until the completion of the plenary hearing. On July 25, 1994, following the plenary hearing, the trial judge issued a written opinion and then *509 entered an order on September 1, 1994. The order reduced the alimony obligation from $204,000 to $150,000 per year. The order also reduced the amount of child support from $18,000 to $5,200 per year. Defendant remained responsible for the cost of the child's education. Both of the reductions were made retroactive to January 1, 1993.
A supplemental order was signed by the judge ordering defendant to pay $2,500 as a portion of the summer school tuition expenses, $12,000 in attorney's fees, and $4,000 in expert fees.
Thereafter, plaintiff filed a motion seeking reconsideration of the retroactivity of the reductions in alimony and child support. The motion also sought enforcement of litigant's rights. The judge denied plaintiff's motion for reconsideration but did enforce litigant's rights.[4]

III
To best understand the decision of the motion judge, we must highlight some of the salient facts elicited at the plenary hearing.
Plaintiff and defendant were married on June 14, 1969. Defendant is an ophthalmologist and is the only professional employee of his own professional association, Ophthalmologic Regional Associates, P.A. in Westville. Plaintiff did not work during the marriage and is not employed now. While residing together, the parties maintained a luxurious lifestyle. Their marital home was owned free-and-clear of any mortgage debt, they vacationed frequently, and plaintiff was permitted to maintain an extensive wardrobe. It is uncontradicted that plaintiff spent approximately $825 per week on clothing, jewelry, and household items. During the last year of the marriage, defendant's gross income was $764,284, a sum which was consistent with his income during the years preceding the divorce.
*510 In 1988 defendant became romantically involved with Sandra Mallon and separated from plaintiff on July 25 of that year. After the separation, defendant hired Mallon to work in his professional office. Although Mallon's salary in 1990 was $9,242.61, her salary as of the date of the plenary hearing and at the time that defendant initially cross-moved for modification of the divorce judgment had increased dramatically to $73,647.75. Prior to the divorce, defendant contracted to build a new private residence at a cost of $1,000,000, which he intended to share with Mallon. Soon after the divorce, defendant and Mallon married.
The fifty-three page property settlement agreement entered into by Peter and Carolyn Walles equitably divided the parties' assets. Aside from the marital home, three other parcels of property, various bank accounts, certificates of deposits, and a stock account, the most substantial asset available for distribution was defendant's pension plan. Plaintiff received, pursuant to a Qualified Domestic Relation Order, one-half of the pension plan as of September 30, 1988, plus $25,000 from the defendant's retained interest in the plan.
In addition, defendant agreed to pay plaintiff $275,000 as follows: an immediate payment of $50,727.51; $49,272.49 no later than January 31, 1991; and $175,000 no later than January 31, 1992. Simple interest of nine percent per annum would accrue on the unpaid deferred distribution effective February 1, 1991.
Defendant's cross-motion seeking a modification of his alimony and child support obligations was predicated on the contention that his post-divorce income had substantially changed. Defendant indicated that his income has dropped as follows: 1991  $656,800; 1992  $572,000; and 1993  $444,000. To verify his contentions, defendant provided copies of the professional association's federal and state tax returns and the joint tax returns which he filed with Mallon, his new wife.
Evidence presented at the plenary hearing revealed that, in June 1992, defendant moved his professional practice to new offices. At the former location, defendant rented 2,500 square *511 feet at a monthly rental of $825; at his new location, defendant rented 5,000 square feet of office space for $1,385. Additionally, defendant made improvements to the new office at a cost of $80,000 and added the cost to his lease, thus incurring an added expense of $10,000 per year. These improvements did not include the cost of custom-built office cabinets or a new machine for testing glaucoma. Defendant had to pay $1,000 per month for five years for the cabinets and $500 per month for three years for the glaucoma testing equipment.
Plaintiff argued before the motion judge that defendant's reduced income was a result of his increased rent, the cost of capital improvements, and the exorbitant salary that defendant paid to his second wife. Defendant attributed the decline in his income to new Medicaid-approved rates for glaucoma treatment which substantially reduced the fees that he could recover from treating Medicaid patients.
After four days of testimony, the motion judge reserved decision and thereafter issued a letter opinion which stated, in part:
Based on my initial analysis I find there has been a substantial change in Dr. Walles' income even using the 1990 figures (the year in which the divorce was finalized). If reference is made to 1989 the reduction is even more significant. The doctor's gross income in 1990 ... was $773,387. The corresponding figure in 1993 was $449,460....
In Schedule "B" I attempted to contrast the doctor's available dollars with those of Mrs. Walles. I recognize it does not include all sources of income for Mrs. Walles. Her passive income is missing in each of the calculations. However I am satisfied that the comparisons are reasonable. As demonstrated the doctor had a substantial part of the family income in calendar year 1990. There was less of a difference in 1991 and 1992 and if he had paid all of the support due and owing under the Property Settlement Agreement in 1993 he would have had less available dollars than Mrs. Walles. This analysis supports the conclusion that there was a substantial change in circumstances.
....
Based on the information that has been presented to me and the substantial change in Dr. Walles' circumstances I have made a new Order regarding alimony and child support. Commencing with January 1993 the doctor's obligation to pay alimony to Mrs. Walles is reduced from $204,000 annually to $150,000 annually. His child support figure is reduced from $18,000 to $5,200. He continues to be responsible for all tuition, books, fees, costs and reasonable transportation associated with his son's college....

*512 In making this Order I recognize that Mrs. Walles' lifestyle will be substantially modified. By the same token, Dr. Walles' lifestyle is substantially modified. Neither party will be able to continue to maintain the lifestyle that has been in effect. Both are going to have to make significant changes.

IV
Under N.J.S.A. 2A:34-23, courts are given an equitable power to modify alimony and support orders:
Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders.... Orders so made may be revised and altered by the court from time to time as circumstances may require.
[Ibid.]
Modification of an award of alimony or child support is appropriate when there has been a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980) (citing Chalmers v. Chalmers, 65 N.J. 186, 192, 320 A.2d 478 (1974), inter alia).
The Supreme Court defined "changed circumstances" in Lepis. The Court began its discussion by noting that "[t]he supporting spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival." Lepis, supra, 83 N.J. at 150, 416 A.2d 45. "When support of an economically dependent spouse is at issue, the general considerations are the dependant spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." Id. at 152, 416 A.2d 45. It is therefore clear that the original judgment establishing alimony creates the standard of living of the supported spouse. Courts look at this figure in addressing future applications for modifications of the judgment based upon allegations of changed circumstances.
*513 In reviewing a trial court's conclusions in a non-jury civil action, we are bound to grant substantial deference to the trial court's findings of fact and conclusions of law. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). A trial court's conclusions should not be disturbed unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484, 323 A.2d 495 (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155, 188 A.2d 43 (App.Div.), certif. denied, 40 N.J. 221, 191 A.2d 61 (1963)).
In the present case, the motion judge set forth very clearly the basis of his decision. He analyzed the former income of defendant, he looked at the budget of plaintiff, and he examined the funds available to both parties. Based on these factors, the judge reduced the amount of alimony from $17,000 per month to $12,500 per month and reduced the child support order from $18,000 per year to $5,200 per year. In reducing child support, the judge retained the component of the original judgment which required defendant to pay all of Jeffrey's educational expenses. At the plenary hearing there was testimony that those educational expenses were approximately $25,000 per year. The judge adopted that figure in the schedules which he attached to his letter opinion. The respective reductions were retroactively effective as of January 1, 1993.
The judge's findings were perfectly consistent with the competent evidence. The judge analyzed the evidence and, with cogent reasoning, reduced the alimony and child support in a fair and even-handed manner. The result was a sound compromise to what both parties were seeking and one which was clearly within the bounds of sound discretion. The trial judge's conclusions will not be disturbed.
As noted, plaintiff filed a motion for reconsideration challenging the retroactive commencement date of the final order. The trial judge refused to modify his decision. We conclude that *514 the trial judge failed to consider properly N.J.S.A. 2A:17-56.23a which provides, in part:
No payment or installment of an order for child support, or those portions of an order which are allocated for child support established prior to or subsequent to the effective date of [2A:17-56.23(a)] shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.
[Ibid.]
Here, defendant's initial cross-motion seeking a reduction of child support was filed April 30, 1993. Thus, the decision retroactively reducing child support payments commencing January 1, 1993, violated the statutory mandate. That component of the final order is reversed, and on remand the final order shall be amended to reflect a retroactive commencement date of May 1, 1993.
There is no analogous statutory provision that prohibits retroactive reduction of alimony payments. We have previously concluded that the retroactivity decision is left to the sound discretion of the trial judge. Brennan v. Brennan, 187 N.J. Super. 351, 357, 454 A.2d 901 (App.Div. 1982). We cannot conclude that the trial judge abused his discretion by selecting January 1, 1993, as the effective date of the reduced alimony award.

V
On appeal, defendant contends that the trial court erred when he ordered defendant to pay $2,500 as partial reimbursement of Jeffrey's summer school expenses incurred during the summer of 1993. We disagree.
As we have noted, when Jeffrey withdrew from college during the fall term of 1992, defendant was fully reimbursed by Berklee School of Music for all sums paid for that semester. Plaintiff had informed defendant as early as March 1993 that Jeffrey intended to enroll at Berklee for its summer session in 1993 to "make-up" for the withdrawn semester. Defendant had the opportunity to voice objection to that proposed plan prior to *515 the commencement of the summer session, yet defendant failed to do so.
At the plenary hearing, evidence established that, although Jeffrey did enroll at Berklee during the summer, he withdrew from all but one of the courses and therefore only received three credits for his summer's work. Clearly the judge took into account that defendant was entitled to some equitable consideration as to his responsibility in paying educational expenses. Consistent with the original judgment and consistent with the order entered after the plenary hearing, the judge did not entirely void defendant's responsibility for the expenses incurred. Plaintiff's request to be reimbursed $7,500 was reduced to $2,500 but was not entirely rejected. That decision was a fair adjustment of the parties' respective claims and appears consistent with the seminal decision on parental responsibility for the cost of higher education, Newburgh v. Arrigo, 88 N.J. 529, 545, 443 A.2d 1031 (1982), particularly factor seven, "the commitment to and aptitude of the child for the requested education." Ibid. (emphasis added).

VI
Defendant also contends, citing D'Oro v. D'Oro, 193 N.J. Super. 385, 474 A.2d 1070 (App.Div. 1984), that the trial judge erred when he ordered defendant to utilize a portion of his retained pension to pay alimony and child support arrears. We disagree.
As noted earlier, at the second enforcement proceeding the trial judge ordered defendant to pay all arrears. The trial judge did not order defendant to use any particular asset to satisfy his obligation. Defendant was free to utilize any available asset or to obtain a loan to satisfy his obligation. The judge did intimate that defendant's failure to abide by the enforcement order might result in a levy on defendant's property including a levy on defendant's pension. Thereafter, defendant's counsel prepared an order which provided for the satisfaction of the existing arrears from defendant's pension under a Qualified Domestic Relations Order and submitted the proposed order to plaintiff's counsel for his consent. *516 That consent order was signed by the judge. Although at the third and subsequent enforcement proceedings the judge, in fact, ordered the payment of arrears from defendant's pension, those subsequent orders were consistent with defendant's voluntary decision to comply with the second enforcement order by voluntarily utilizing his pension. We do not conceive that the judge's successive orders were proscribed by D'Oro. The judge was not using defendant's pension to determine his income for the purpose of establishing alimony; he merely considered defendant's pension as an asset available to defendant which defendant might use to satisfy past due alimony and child support obligations.

VII
Defendant also contends that the trial court erred when he ordered defendant to pay $12,000 in counsel fees and $4,000 for the costs of plaintiff's expert.
Counsel fees in family matters are permitted by statute, N.J.S.A. 2A:34-23, which states, in part:
[t]he court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.
[Ibid.]
and Court Rule, R. 4:42-9(a)(1):
In a family action, the court in its discretion may make an allowance both pendente lite and on final determination to be paid by any party to the action, including if deemed to be just any party successful in the action, on any claim for divorce, nullity, support, alimony, custody, visitation, equitable distribution, separate maintenance, enforcement of interspousal agreements relating to family type matters....
[Ibid.]
In Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971), the Supreme Court discussed factors to be considered in awarding counsel fees in a matrimonial action. Those factors include "the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action." Id. at 233, 281 A.2d 273. Here, although plaintiff's financial circumstances *517 might not have warranted an award of counsel fees in a routine post-divorce application, other factors certainly supported such an award. Plaintiff was forced to retain counsel and to file five successful enforcement proceedings resulting from defendant's continuous failure to pay alimony and child support. Plaintiff also had to engage counsel to defend defendant's cross-motion for a reduction of alimony and child support, necessitating a four-day plenary trial. The award of counsel fees was warranted. The modest sum awarded demonstrates that the court was fully appreciative of the fact that plaintiff was financially able to pay the bulk of her own counsel fees. Moreover, an award of counsel fees and costs is left to the sound discretion of the trial court. Ibid. Defendant has failed to demonstrate that the judge abused his discretion.

VIII
On plaintiff's motion for reconsideration, she requested an order which would compel defendant to disclose his income periodically to plaintiff. Such a mechanism would be an aid to plaintiff in seeking to reinstate the original award of alimony should defendant's fortunes once again turn. The motion judge denied that relief. We conclude that the particular facts of this case warranted granting this extraordinary relief.
Under Lepis, supra, 83 N.J. at 157, 416 A.2d 45, a party seeking modification of a judgment of divorce must demonstrate a substantial change in circumstances. Once a prima facie case of changed circumstances has been established, then, and only then, will the party be permitted to engage in discovery prior to a plenary hearing. Ibid. We note, however, that the Lepis procedure was enunciated in a case where a dependent spouse sought an increase in alimony. Thus, the Supreme Court phrased the moving party's obligation as a demonstration that "changed circumstances have substantially impaired the ability to support himself or herself." Ibid. As noted in Lepis, "[t]he supporting spouse's obligation is mainly determined by the quality of economic life during the *518 marriage.... [T]he needs of the dependent spouse and children `contemplate their continued maintenance at the standard of living they had become accustomed to prior to the separation.'" Lepis, supra, 83 N.J. at 150, 416 A.2d 45 (quoting Khalaf v. Khalaf, 58 N.J. 63, 69, 275 A.2d 132 (1971)).
Here, defendant, as the sole professional employee of a professional association, has provided the court and plaintiff with his professional association's business records and income tax returns to demonstrate that his gross income has been substantially reduced by in excess of $300,000. Despite the substantial salary paid to defendant's second wife and despite the inordinate increase in office operating expenses and rent, the judge still concluded that defendant's income had been substantially reduced as a result of a reduction in the Medicaid reimbursement allowed for the treatment of glaucoma. Defendant also waived any claim of confidentiality by openly disclosing for review his joint income tax returns filed with his second wife, a decision which we infer was concurred in by his second wife.
Plaintiff's standard of living was established by the terms of the 1990 property settlement agreement. Defendant agreed to pay plaintiff $17,000 per month in alimony "without term." Plaintiff may not hereafter seek an order reinstating her former alimony award without first demonstrating a substantial change in her circumstances. Yet, here it is not plaintiff's circumstances which will warrant an increase in alimony. It is defendant's future increase in income which will be determinative. This is not a case where a former spouse seeks an increase in alimony predicated on a claim that the supporting spouse's income has increased since the divorce and where the supported spouse seeks to raise her standard of living to a status greater than the status enjoyed during the marriage. Here, any future application by the supported spouse will be aimed at returning her to the status which was enjoyed during the marriage. If defendant's income were to rise dramatically to the level enjoyed before his divorce from plaintiff, plaintiff's alimony award should likewise be returned to *519 the amount agreed upon in the property distribution agreement and incorporated in the divorce decree.
Must plaintiff be forced to monitor defendant's lifestyle or his corporate activity from afar so as to gather evidence indicative of a change in circumstances to obtain future discovery after filing a costly motion with assistance of counsel? We think not. Defendant justifiably sought a reduction in his alimony obligation. Defendant should be obliged to reveal his annual income and the income tax return of his professional association. From the evidence presented at the plenary hearing, it is clear that defendant has relocated to new modern offices with the finest furniture, equipment, and fixtures. His debt service is fixed, and his rent is fixed. The only aspect of defendant's ability to pay alimony which is not fixed is the salary paid to defendant and to defendant's second wife. Defendant is solely in control of those variables. Should not there be a mechanism in place to analyze this information for determining when and if defendant's income has increased sufficiently to warrant further review of the modified order? We answer our question in the affirmative.
We do not conclude that the relief sought here is appropriate in every case. In fact, the relief sought should be deemed extraordinary and sparingly granted by the Family Part. We do conclude, however, that where the standard of living of an obligee has been established by a divorce judgment or by an agreement incorporated within a divorce judgment, and where the obligor seeks a modification predicated on a reduction in income, a mechanism must be created in order to monitor reliable evidence and to determine whether the need which necessitated the modification is on-going.
As a corollary, assuming defendant's income gradually increases, the trial court should devise a mechanism or formula designed to restore, although gradually, the alimony payments to the original judgment sum. Such a devise or formula will avoid multiple motions and needless litigation. The obligee need not resort to subterfuge to discern a change in defendant's lifestyle. *520 Defendant's financial records will trigger the modification with little or no further judicial intervention. Parenthetically, we note that escalation clauses that are fair and equitable are not prohibited. Petersen v. Petersen, 85 N.J. 638, 646, 428 A.2d 1301 (1981); Rolnick v. Rolnick, 262 N.J. Super. 343, 354, 621 A.2d 37 (App.Div. 1993); Dunne v. Dunne, 209 N.J. Super. 559, 566, 508 A.2d 273 (App.Div. 1986).
We believe this rule is consistent with recent statutory enactments that require the review of all child support orders every three years. N.J.S.A. 2A:17-56.8:
Every complaint, notice or pleading for the entry or modification of an order of a court entered or modified which includes child support shall include a written notice to the obligor stating that the child support provision of the order shall ... be enforced by an income withholding.... The written notice shall also state that the amount of a IV-D child support order ... shall be reviewed and updated, as necessary, at least every three years.

[Ibid. (emphasis added).]
The legislature amended the statute in 1990 to include the provision for review of child support orders every three years. This was done so that a court could determine whether a particular child support order was in full compliance with the support guidelines set forth in New Jersey's Court Rules.
Here, the automatic discovery mechanism is necessary to determine whether or not an obligor can afford to comply with the dictates of a divorce judgment. There is no reason that a recipient of alimony should be permanently required to live at a standard of living below that which was established by a judgment of divorce. Defendant might very well return to his pre-divorce income level, and plaintiff should be able likewise to return to the standard of living to which she was accustomed. Without the above-described mechanism, plaintiff would be unable to make a prima facie case of changed circumstances.
In the present case, it is appropriate for defendant's financial data to be delivered directly to plaintiff. Defendant has waived any claim of confidentiality as to his own finances, and his second wife's entire income is derived solely from her employment *521 in defendant's professional association. In those cases where a second wife's (husband's) income is not derived wholly from employment by a party litigant, the motion judge must determine whether direct discovery or an in camera inspection is more appropriate.
If, in the future, defendant's wife's income is no longer solely derived from her work in defendant's office, the motion judge will, upon request, determine whether in camera inspection is the more appropriate mechanism. In any case, the motion judge will be required to weigh plaintiff's discovery needs against defendant's right to protect the financial privacy of his second wife. See Lepis, supra, 83 N.J. at 157, 416 A.2d 45.
The order is affirmed in part, reversed in part, and the matter is remanded to the trial court, which shall modify the order consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] In the colloquy between counsel for both parties and the court, it is clear that defendant had been apprised, prior to the court date, that Jeffrey Walles intended to attend summer school during the summer of 1993. Plaintiff's counsel expressed a concern that defendant might refuse to pay the anticipated educational expenses. The motion judge properly ruled that any issue regarding Jeffrey's educational expenses was not before the court as that issue was not encompassed in plaintiff's motion or defendant's cross-motion.
[2] Defendant's total alimony and child support obligation was $18,500 per month. The record does not reflect why the order required defendant to pay $38,000 rather than $37,000; however, there is reference in the record that defendant may have made a partial payment on his obligation during that period of time. Perhaps this accounts for the discrepancy.
[3] Defendant was given credit for payments actually paid from the date of the last preceding order.
[4] The details of plaintiff's enforcement application and the relief granted are not pertinent to this appeal.