**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0755-24

A.K.,[1]

    Plaintiff-Respondent,

v.

M.K.,

    Defendant-Appellant.

_____

        Argued January 27, 2026 – Decided April 24, 2026

        Before Judges Sumners and Susswein.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0026-09.

        M.K., appellant, argued the cause on appellant's behalf.

        A.K., self-represented respondent.

---

[1] We use initials and a fictitious name to preserve the privacy and confidentiality of the child.  R. 1:38-3(d).

PER CURIAM

This post-divorce judgment dispute arises from a 2018 agreement involving college contributions for the parties' youngest daughter, S.R. (Sandy). Defendant appeals the motion court's September 24, 2024 order denying reconsideration of its May 22, 2024 order denying her request to compel plaintiff to pay additional contribution to Sandy's college expenses beyond the 2018 agreement amount; submit an updated case information statement (CIS); and pay her counsel fees. Because the motion court failed to properly apply the law and articulate its reasoning, we reverse and remand.

I.

The parties were married in 1995 and divorced in 2009. While plaintiff was initially awarded sole custody of the parties' two daughters, custody was granted to defendant in 2014. Defendant is disabled and receives monthly Social Security benefits.

On February 21, 2018, the court entered an order memorializing the parties' agreement stipulating plaintiff's financial obligations to his children. The order relevantly states:

> 2. If a full-time college student, each child of the marriage shall apply for and accept any and all offers of financial aid . . . .

2

A-0755-24

3.  Effective February 21, 2018, after application of financial aid as specified in the preceding paragraph, college tuition, room and board, books, and legitimate fees shall be paid seventy[-]five percent (75%) by [p]laintiff up to a maximum of $12,000 per year. Plaintiff shall make payment directly to the child's educational institution.  This allocation of 75% deviates in defendant's favor from the 68% allocation of income as calculated as in the Child Support Guidelines Worksheet . . . .

. . . .

8.  Plaintiff's child support obligation shall continue at $286 per week without any reduction or credit until such time as per the child support laws and/or as a change of circumstances exists, such as college graduation and/or the younger child turning eighteen and/or attending college full-time and/or emancipation.

An administrative order for the continuation of support issued on January 31, 2022, increased the weekly child support award to $313 for Sandy until March 18, 2026, due to her educational status.  Plaintiff's wages are garnished to satisfy his child support obligations.

On May 22, 2024, the court heard defendant's motion to modify the 2018 agreement because of Sandy's increased cost of attending the State University of New York (SUNY).[2]  Defendant demanded plaintiff to be "responsible for

---

[2]  A different court initially heard arguments on this motion in August 2023, but no order was issued and the matter was transferred to the court which entered an order on May 22, 2024.

3

100% of the costs of college education . . . through her enrollment and completion of the program at [SUNY]" in lieu of contributing to child support and healthcare, arguing that it amounted to roughly the same amount. She also requested counsel fees, and that plaintiff be compelled to provide an updated CIS.

Defendant argued that the $12,000 cap on plaintiff's college expense obligation was not practicable given the rising cost of tuition and the financial disparity between the parties. She explained that when the parties negotiated their agreement, the amount was based on the tuition cost of the college the eldest daughter was attending, but the costs for the colleges Sandy wanted to attend were more expensive. Defendant explained that Sandy had already forgone attendance at her dream school, Berklee School of Music, and instead attended Mercer County Community College (MCCC) before being accepted to SUNY. She further argued that plaintiff had failed to pay college expenses for Sandy's attendance at MCCC prior to her matriculation at SUNY because he disapproved of Sandy's pursuit of music education and stated he would either contribute to child support or college costs, but not both.

That same day, the court entered an order enforcing the 2018 agreement without modification because it was the result of negotiation by the parties who

A-0755-24

were represented.  The court stated that "it should not have come as a surprise to either party . . . in 2018 that the cost of higher education might well exceed $12,000."  The court ordered that plaintiff's child support and health insurance responsibilities continue, and that "[i]n the event [plaintiff] ha[d] not contributed to college costs associated with . . . either child, the financial deficiency shall be cured within [thirty] days."  The court also denied defendant's request to require that plaintiff provide an updated CIS, stating that it was enforcing the 2018 agreement.

As to counsel fees, the court held:

> [I]n this particular case[,] there is in all likelihood significant financial disparity between the parties.  That is one factor under [Rule] 5:3-5.
>
> . . . .
>
> And in this particular case[,] the response required by plaintiff and the cost incurred by [him] [f]or the engagement of [counsel] are a result of [defendant] attempting to change the ongoing . . . 2018 [agreement]. And, accordingly, the [c]ourt is not going to grant counsel fees to plaintiff, but the [c]ourt is also going to not . . . grant counsel fees to defendant.

Defendant moved to reconsider the denial of counsel fees, and plaintiff cross-moved seeking reconsideration of the denial of his counsel fees and sanctions for frivolous litigation against defendant under Rule 1:4-8.

5

On reconsideration, defendant challenged the motion court's finding that the litigation costs incurred by both parties were because she initiated litigation. She argued that plaintiff violated the 2018 agreement by refusing to contribute to Sandy's MCCC expenses between 2022-2023, and that she tried "multiple times to settle things outside of court, first by emailing [plaintiff] directly then by having [her] lawyer send him a letter, but he repeatedly stated . . . that he would not comply with the terms of the court order." Defendant further argued that plaintiff failed to contribute to Sandy's enrollment, housing deposit, and first month's tuition at SUNY, even though they advised him about the upcoming costs months in advance. She alleged plaintiff only began making SUNY tuition payments after the initial hearing on her motion on August 25, 2023. Accordingly, she argued that plaintiff was the reason litigation ensued, as he refused to comply with the 2018 agreement, justifying her $6,704.53 counsel fees demand.

The motion court denied both parties' motions, once again "acknowledg[ing] that there [was] a significant disparity in the income of the respective parties" but reasoned that it is only "one factor set forth under the rule." The court noted that other factors are "the reasonableness and good faith of the positions advanced by the parties, and . . . the degree to which the fees

6

were incurred to enforce existing orders or to compel discovery," but stated only that defendant "would not have . . . incurred . . . counsel fees had she not sought to enforce a[n] order of the court issued in 2018."

## II.

We "'will disturb a trial court's determination on counsel fees only on the "rarest occasion," and then only because of clear abuse of discretion.'" Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)). Similarly, a "trial court's denial[s] of plaintiff's motion for reconsideration" is reviewed under the abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicable departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. Naturalization Servs., 779 F.2d 1260, 1265 (7th Cir. 1985)).

A family court should consider the following factors when determining whether counsel fees should be awarded:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions

7

advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

A.

The motion court addressed only three of the nine factors set forth in Rule 5:3-5(c), and its analysis of those factors was cursory and conclusory. As to the first factor, the financial circumstances of the parties, the court found that "there [was] in all likelihood significant financial disparity between the parties." However, it did not analyze what that disparity was. The record indicates the court was aware of defendant's income, but there is no indication that the court was aware of plaintiff's income. The court should have required plaintiff to submit an updated CIS to ascertain his financial circumstances.

While the court mentioned the third factor, "the reasonableness and good faith of the positions advanced by the parties both during and prior to trial," R. 5:3-5(c)(3), it conducted no analysis nor made any finding as to that factor. Defendant's arguments in support of this factor were raised before the court but were not specifically addressed.

8

The motion court relied heavily on factor eight, "the degree to which fees were incurred to enforce existing orders or to compel discovery." R. 5:3-5(c)(8). It stated that defendant "would not have . . . incurred . . . counsel fees had she not sought to enforce a[n] order of the court issued in 2018," concluding that this factor weighed in favor of denying her counsel fees. The court misapplied this factor.

In Walles v. Walles, we held that even when a party's "financial circumstances might not have warranted an award of counsel fees," the need for a party "to retain counsel and to file five successful enforcement proceedings resulting from defendant's continuous failure to pay alimony and child support" justified an award of counsel fees. 295 N.J. Super. 498, 516-17 (App. Div. 1996). Walles demonstrates that when a party is forced to retain counsel and initiate litigation because of the other party's failure to comply with court-mandated obligations, factor eight weighs in favor of the party who initiated litigation.

Here, the court failed to consider the extent to which plaintiff's actions or inactions forced defendant to initiate litigation. The court's finding that legal fees incurred by the parties "were directly related to enforcing the 2018 order" should weigh against the party in violation of a court order. Accordingly, the

9

motion court should resolve whether plaintiff violated the 2018 order, thereby necessitating defendant's motion.

There was no discussion regarding the Rule 5:3-5(c) factors two, four, five, six, seven, and nine. Additionally, it is unclear whether either party submitted an affidavit of services supporting their counsel fees request. See R. 3:5-3(d).

Because the motion court failed to properly apply or analyze the Rule 5:3-5(c) factors in denying defendant counsel fees, it mistakenly applied its discretion. Further, the court's reasoning does not satisfy the requirements in Rule 1:7-4. See Curtis v. Finneran, 83 N.J. 563, 570 (1980) ("Naked conclusions do not satisfy the purpose of R. 1:7-4.").

B.

Turning to plaintiff's non-submission of a CIS, defendant argues that the motion court erred in failing to require plaintiff to provide his CIS because the best interests of the child and Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), require such disclosures.

The motion court did not compel plaintiff to provide an updated CIS because it was "enforcing the [2018 agreement]." However, the mere presence of a preexisting marital agreement does not preclude the parties' obligation to

submit financial statements or CISs. See Zazzo v. Zazzo, 245 N.J. Super. 124, 129 (App. Div. 1990) (reversing a motion court's ruling that no CIS was necessary, notwithstanding an existing child support agreement, because a "complete financial information of both parents was necessary for any order of child support"). Rather, Rule 5:5-3 requires the non-filing party's CIS in summary actions involving college expenses contribution when the moving party establishes good cause or a prima facie showing of a substantial change in circumstances. See R. 5:5-3(b) and (c). "When a party to a comprehensive negotiated [property settlement agreement] seeks to modify any support obligation, that party must meet the threshold standard of changed circumstances." J.B. v. W.B., 215 N.J. 305, 327 (2013).

Defendant's best interests of the child standard and Newburgh arguments, however, are misguided. The best interests of the child standard only "informs consideration of a motion to modify a negotiated comprehensive [agreement] once the party seeking modification demonstrates changed circumstances." J.B., 215 N.J. at 327-28. Similarly, while Newburgh lays out factors for a court considering claims for higher education contributions, here there is an agreement regarding the party's contributions. Therefore, the issue is one of

11

modification to the 2018 agreement, which requires a threshold showing of changed circumstances.

Defendant's initial motion sought, in part, modifications to plaintiff's contribution to college expenses. The motion court provided no analysis or specific findings as to whether defendant made a prima facie showing of changed circumstances or if there was good cause to require plaintiff to provide an updated CIS. During the May 22 2024 hearing, the court asked, "are you suggesting that [the] order should be set aside say hypothetically because . . . plaintiff['s] . . . financial situation improved significantly since the entry of that 2018 order . . . [a]nd that . . . defendant['s] financial position in essence deteriorated since the entry of the order?" Defendant responded affirmatively. However, upon declining to compel plaintiff to submit an updated CIS, the court provided no reasoning beyond stating that it was enforcing the 2018 agreement. Its decision to deny plaintiff's request for an updated CIS was a naked conclusion which misapplies its discretion. Curtis, 83 N.J. at 570. As noted, an updated CIS would allow the court to properly conduct the counsel fees analysis.

Reversed and remanded for proceedings consistent with this opinion. The remand must be completed within forty-five days of the opinion. We leave it to

12

the motion court's discretion whether to permit further briefing and argument.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0755-24