**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1112-20

LUCIA COLACURTO,

     Plaintiff-Respondent,

v.

ANTHONY COLACURTO,

     Defendant-Appellant.

_____

         Submitted March 16, 2022 – Decided March 31, 2022

         Before Judges Vernoia and Firko.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2627-17.

         De Marco & De Marco, attorneys for appellant (Michael P. De Marco, on the briefs).

         Jardim, Meisner & Susser, PC, attorneys for respondent (Jessica Ragno Sprague, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Anthony Colacurto appeals from a November 13, 2020 Family Part order denying his request for modification of custody and parenting time regarding the parties' eight-year-old daughter. Defendant also appeals denial of his motion to recalculate his $262 per week child support obligation. For the reasons that follow, we affirm.

I.

The following facts are derived from the motion record. The parties divorced in March 2014 after nearly three years of marriage. Their daughter was born in April 2012. Plaintiff Lucia Colacurto and defendant entered into a property settlement agreement (PSA), which was incorporated into their final dual judgment of divorce (FJOD). Plaintiff remarried and resides with her current husband and the parties' daughter in Chatham. Plaintiff has three adult stepchildren who periodically reside in the household.

The FJOD granted joint legal custody of the parties' daughter, the only child born of their marriage. Plaintiff was designated as the parent of primary residence (PPR), and defendant was designated as the parent of alternate residence (PAR). Paragraph 3.2(ii) of the PSA provided that after the parties' daughter turned three years of age:

> [Defendant] shall have overnight visitation[] with the [c]hild every other weekend commencing at 6:00 p.m.

every other Friday and ending at 6:00 p.m. the following Sunday. [Defendant] shall have one overnight visitation on Tuesday of each week commencing immediately after day care (or school) concludes and ending when [defendant] drops the [c]hild off at day care or school the following day.

At the time the parties entered into the PSA, they resided in Bloomingdale. During the divorce proceedings, Dr. Amie Wolf-Mehlman completed a best-interests evaluation report relative to custody of the daughter.[1] Notably, paragraph 3.7 of the PSA states: "Pursuant to the recommendations of Dr. Wolf-Mehlman, the parties shall engage the services of a Parent Coordinator (PC) in order to assist them with any post[-]divorce issues that should arise between them concerning the child." There is nothing in the record indicating a PC was appointed or agreed upon until the November 13, 2020 decision by the judge.

The PSA also provides that child support "was calculated in accordance with the [c]hild [s]upport [g]uidelines, [s]hared parenting [w]orksheet, based on [plaintiff]'s income of $60,000 per year and" defendant's income of $50,000 per year. The relationship between the parties has been acrimonious post-divorce. They have filed multiple post-judgment motions and an order to show cause to

---

[1] Dr. Wolf-Mehlman's initial best-interests evaluation report was not included in the appendices.

enforce litigant's rights relative to listing the former marital residence for sale and to modify custody.

On April 2, 2015, three orders were issued by a previous Family Part judge: (1) holding defendant in contempt of court; (2) enforcing a prior court order relative to defendant being ordered to pay a $2,000 counsel fee to plaintiff; (3) for an immediate sale of the former marital residence; and (4) re-appointing Dr. Wolf-Mehlman to complete an updated best-interests evaluation. In her updated report, Dr. Wolf-Mehlman recommended defendant's parenting time remain unchanged.[2]

On June 28, 2017, a prior judge denied defendant's pro se motion to modify custody and parenting time and denied his request for a fifty-fifty custody arrangement. The judge found defendant failed to show a substantial change of circumstances; defendant was ordered to bring the daughter to all scheduled activities during his parenting time; and the judge held him in violation of litigant's rights for failing to pay the outstanding counsel fee award to plaintiff, which had been increased from $2,000 to $2,500. In addition, the judge transferred venue from Passaic County to Bergen County due to defendant's employment with the Passaic County Sheriff's Department.

---

[2] Dr. Wolf-Mehlman's updated report is also not included in the appendices.

On September 2, 2020, defendant filed another motion to modify custody and parenting time and to recalculate child support. In his moving certification, defendant asserted plaintiff's move with their daughter to Chatham and re-marriage constituted "a significant change in circumstances" warranting a modification to the PSA, and that he should be designated PPR. Defendant also certified the parties' daughter "complained" to him about her new living arrangements; "that [p]laintiff takes sides with her boyfriend"[3]; and the child "is required to wake up, even on non-school days[,] between 6:00 a.m. and 7:00 a.m." In addition, defendant related that the daughter complained about plaintiff signing "her up for art classes all week, horse[back] riding lessons, [and] violin lessons." According to defendant, plaintiff does not notify him about their daughter's extra-curricular activities. He also averred that plaintiff is "coaching" their daughter on "what to say" during his FaceTime conversations with her.

As to his request to modify child support, defendant certified that "based upon information," he learned plaintiff changed her employment and is working at the law firm of Kelley Drye, where her husband is a partner. Defendant claims plaintiff "received an increase in her salary" and refused to disclose her current

---

[3] The record refers to plaintiff's significant other as her "boyfriend," "fiancé," and "husband" interchangeably. Plaintiff refers to this individual as her "husband." This is not germane to our decision.

earned income. According to defendant's paystubs included with his motion, he claims, "through June 15, 2020, [he] had only earned $22,835.61, which included road projects" and he is "left with net pay between $423 [to] $329 per week to pay [his] expenses."

Plaintiff filed a notice of cross-motion seeking to enforce financial obligations for the parties' daughter relative to child care; payment of the outstanding $2,500 court-ordered legal fee; compelling defendant to participate in the daughter's therapy; restraining him from discussing litigation matters with their daughter; restraining him from adding additional adults to the school pick up list without plaintiff's written consent; removing defendant's mid-week overnight parenting time; and for additional counsel fees and costs.

In her cross-moving certification, plaintiff states defendant "refused to retain Dr. Wolff-Mehlman" or pay her retainer fee and he "was restrained from picking up [their daughter] at any other time than his scheduled parenting time (because he had a habit of doing whatever he wanted.)" Defendant "was also restrained from speaking about or showing [their] daughter videos depicting dangers of vaccinations." Plaintiff claims defendant got the "facts" wrong in his motion—she was not living alone at the time of their divorce and moved back in with her parents for financial reasons. In addition, plaintiff certified she

informed defendant she was engaged to her now husband, an attorney, and was moving to Chatham.

According to plaintiff, the parties' daughter is "very happy and thriving in her new home." Plaintiff decided to leave her employment and be a stay-at-home mom, which was opportune during the COVID-19 shutdown, virtual school in the spring, and the hybrid school schedule thereafter. Notwithstanding her loss of earned income, plaintiff certified she had "no issue" with continuing the $60,000 imputation of income to her as provided in the PSA.

Plaintiff also certified that defendant "has had multiple romantic relationships" since their breakup and "had girlfriends moving in and out of his residence," causing their daughter to experience "distress." In contrast to defendant's certification, plaintiff represents their daughter "complained of being 'kicked out' of" defendant's bedroom, she argues with him, deals with the "craziness" of his girlfriends, and becomes "very upset" when she leaves for parenting time with her father. Plaintiff certified she provided defendant with information about their daughter's extracurricular activities, but he takes no interest and does not contribute financially, even in the face of court orders. Plaintiff states she takes the daughter to all her doctor's visits and therapy sessions.

A-1112-20

As to the issue of child support, plaintiff contended defendant's June 15, 2020 pay stub shows his bi-monthly income is $1,968, however, the pay stub attached to his case information statement (CIS) reveals he receives $2,223.38 per pay check. This would calculate to an annual base income of $53,361.12, plus "additional income based upon his pay stub." Plaintiff argued defendant recently lost a tenant who paid him rent for an apartment in his two-family home, and he has not sought out another tenant. Defendant's rental income was not included in the child support calculation set forth in the PSA. Plaintiff also certified defendant recently received an inheritance from his aunt but did not disclose the amount in his moving papers.

In his reply certification to plaintiff's cross-motion, defendant reiterated many of the arguments he asserted previously. He certified his tenant passed away, and he will not relet the apartment because he requires "additional space for [his] growing family." His aunt's estate "has not been settled yet," and he lives "paycheck to paycheck." Defendant refuted plaintiff's allegations about his ex-girlfriend and claims "the relationship ended due to the example she was setting for [the parties' daughter]." His fiancée is involved with the child's life and co-parents with him.

A-1112-20

On November 6, 2020, the judge conducted oral argument on the motions via Zoom. The parties participated; were administered the oath; and defendant answered questions posed by the judge. After considering the arguments and testimony, the judge rendered an oral opinion that day and concluded:

> I'm not going to change parenting and custody right now because I don't feel that a prima facie showing has been established that there's a need within the best interest of the child at this point. What I do think is there are a lot of issues regarding parenting time and those issues really need to get resolved and can be resolved outside of the [c]ourt.

The judge specifically noted:

> [W]hat I am going to do is to put in place a person, a person to help navigate some of the problems that have been going on in terms of resolution of parenting time issues . . . . The [PC] can make the calls if – about who gets [the daughter] . . . and how to deal with that. They can make the call about certain extracurricular activities when there's a dispute so it doesn't have to get personal and nasty between the two of you. It can be resolved way before then and it helps open up the lines of communication. That's what I think is needed in this case.

The judge denied defendant's motion to modify parenting time and to recalculate child support. As to plaintiff's cross-motion, the judge granted her request to enforce defendant's payment of child care obligations; payment of outstanding legal fees; and enforced his obligation to bring the daughter to her

9

extracurricular activities during his parenting time. Plaintiff's request for additional counsel fees and costs was denied. A memorializing order was entered. A separate order was entered on November 13, 2020, appointing Jodi Argentino, Esq. as PC, to address "any remaining issues regarding parenting time." This appeal ensued.

Defendant raises the following issues on appeal:

> (1) the judge erred in denying his motion to modify the custody and parenting time provisions of the PSA because there was a prima facie showing of changed circumstances bearing upon the daughter's best interests; and

> (2) the judge erred in denying his motion to modify the child support provisions of the PSA.

Following our careful review of the record, we reject defendant's arguments.

II.

Our Court has routinely recognized the Family Part's "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)); see also Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016) (recognizing "review of the Family Part's determinations regarding child support is limited"). Thus, we defer to the Family Part's factual findings and decision unless such decision constitutes as an abuse of discretion, i.e.: (1) its "findings

10

are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice,'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); (2) the court failed to consider all controlling legal principles, Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008); or (3) the court entered an order that lacks evidential support, see Mackinnon v. Mackinnon, 191 N.J. 240, 254 (2007).

A Family Part's "legal conclusions, and the application of those conclusions to the facts," however, are reviewed de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013); see also Quinn v. Quinn, 225 N.J. 34, 45 (2016) (noting traditional contract principles apply to the Family Part's contract interpretation of a parties' PSA); Kieffer v. Best Buy, Inc., 205 N.J. 213, 222-23 (2011) (noting the interpretation of a contract is an issue of law that an appellate court reviews de novo).

First, defendant argues the judge erred in finding he had failed to establish a prima facie showing of changed circumstances. Specifically, defendant claims in denying his motion, the judge "failed to set forth the reasons for making [her] conclusion." The Family Part's primary consideration in custody cases "is the

best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). Therefore, the Family Part's ultimate focus is always "on the 'safety, happiness, physical, mental and moral welfare' of the children." Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)); see also P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999) ("In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'" (alteration in original) (quoting Giangeruso v. Giangeruso, 310 N.J. Super. 476, 479 (Ch. Div. 1997))).

The party seeking to modify custody, however, must first demonstrate a substantial change of circumstances, which will affect the children's welfare, before the Family Part will consider the best interests of the children anew. Hand, 391 N.J. Super. at 105; Slawinski v. Nicholas, 448 N.J. Super. 25, 36 (App. Div. 2016) (citation omitted); Bisbing v. Bisbing, 445 N.J. Super. 207, 218 (App. Div. 2016) (quoting Walles v. Walles, 295 N.J. Super. 498, 517 (App. Div. 1996)). The Family Part will not reconsider the best interests of the children absent the moving party's prima facie showing of changed circumstances. See, e.g., Hand, 391 N.J. Super. at 112.

12

Nor may the Family Part conduct a plenary hearing where the moving party has failed to establish a prima facie showing that such a hearing is necessary. Id. at 106. The Family Part is required to conduct a plenary hearing only "when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the [Family Part] determines that a plenary hearing is necessary to resolve the factual dispute." Id. at 105 (emphasis added); Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012) (quoting Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)).

The Family Part will generally disregard conclusory allegations "when determining whether a hearing is necessary." Hand, 391 N.J. Super. at 112 (citing Lepis v. Lepis, 83 N.J. 139, 159 (1980)); see also Lepis, 83 N.J. at 159 ("[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary."). The Family Part has substantial discretion in granting or denying applications to modify child support, and generally we will defer to the Family Part's decision of "whether a plenary hearing must be scheduled." Jacoby, 427 N.J. Super. at 123.

The judge's decision, however, must be supported by the record and be "consistent with controlling legal principles." See Hand, 391 N.J. Super. at 112. The Family Part has "a duty to make findings of fact and to state [its] reasons in

13

support of [its] conclusions." Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996); see R. 1:7-4(a). Otherwise, meaningful appellate review will be inhibited. Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). As such, a Family Part's naked conclusion will not suffice. Curtis v. Finneran, 83 N.J. 563, 570 (1980); see also Avelino-Catabran, 445 N.J. Super. at 595 (noting a court "does not discharge [its] function simply by recounting the parties' conflicting assertions and then stating a legal conclusion").

In the matter under review, the judge thoroughly considered the record, oral arguments, and rendered a comprehensive decision. We agree with the judge that defendant failed to provide any evidence in support of the relief sought in his motion. Indeed, the judge highlighted:

> You have to establish harm to the child. Okay? You have to establish harm because . . . because of X, Y and Z the [c]ourt needs to intervene and . . . get involved in changing an agreement that was made between the parties. Okay? That's, that's . . . because this is about [the] best interest of the child.
>
> What I'm hearing is the parents . . . this is what I'm gathering from reading the papers. They don't get along at all. They fight about everything and the child is stuck in the middle of all of this. . . . Both of them are having a hard time co-parenting and we have a child that's stuck in the middle, but because of that that's why

14

I want your client to participate in the therapeutic process.

I haven't received anything from a therapist saying that, oh, my God, this child is falling apart and that you need to . . . change . . . custody and parenting time. I haven't gotten anything from [the Division of Child Protection and Permanency (the Division)] saying, oh, my God, this child is in a bad way. The [c]ourt needs to intervene. Because I've done it. I've done it. . . . [T]here's something going on. This is not good for the child. [The Division] is involved. The school's are involved. There's a whole lot of ways to prove that the child is not in a good place and you haven't shown me anything. What I, what I have heard is that there's a need for a [PC] in this case.

Contrary to defendant's contention, the judge did not err in denying his motion to modify the PSA relative to custody and parenting time. Moreover, the judge aptly pointed out to the parties that their daughter was "stuck in the middle" of this dispute, and a PC was needed to address ongoing parenting issues, as was contemplated more than six years earlier in their PSA. The judge was correct in her analysis, which was based upon substantial credible evidence in the record. Moreover, the record supports the judge's findings and conclusions, and she did not reach an erroneous finding on custody and parenting time of the parties' daughter.

III.

Next, defendant argues the judge erred in finding the child support provisions of the PSA to be non-modifiable. In particular, defendant claims the agreement's anti-Lepis clause,[4] Article 7.12, only applies to the parties' alimony agreement and not to their respective child support obligations.

Under N.J.S.A. 2A:34-23, the Family Part has the authority to modify child-support "from time to time as circumstances may require." Spangenberg, 442 N.J. Super. at 535 (quoting N.J.S.A. 2A:34-23). "Our courts have interpreted this statute to require a party who seeks modification to prove 'changed circumstances.'" Id. at 536 (alteration in original) (quoting Lepis, 83 N.J. at 157). The Family Part's consideration of "changed circumstances" includes the change in the parties' financial circumstances, whether the change is continuing, and whether the parties' agreement "made explicit provision for the change." Ibid. (quoting Lepis, 83 N.J. at 152).

A parties' settlement agreement may reasonably limit the circumstances that may qualify as "changed" by including within the agreement an explicit

_____

[4] An anti-Lepis clause waives the parties' rights to modify their fixed payment, or the established criteria of payment, for reasonably, foreseeable future circumstances that would otherwise give rise to judicial modifications of their agreement. Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993).

A-1112-20

provision for the change—an anti-Lepis clause. See Quinn, 225 N.J. at 49. Anti-Lepis clauses are subject to enforcement where the parties "with full knowledge of all present and reasonably foreseeable future circumstances bargain[ed] for a fixed payment or establish[ed] the criteria for payment[,] . . . irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Morris, 263 N.J. Super. at 241. The Family Part will not unnecessarily or lightly disturb such arrangements if the arrangements are fair and definitive. Quinn, 225 N.J. at 44-45 (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)); see also id. at 44 ("[T]here is a 'strong public policy favoring stability of arrangements in matrimonial matters.'" (quoting Konzelman, 158 N.J. at 193)). Nor may the court rewrite the agreement "or grant a better deal than that for which the parties expressly bargained." Id. at 45.

A parties' "settlement agreement is governed by basic contract principles." Ibid. "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. (citing Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) ("A court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping

with the expressed general purpose." (internal quotations and citations omitted))). "[A]ny ambiguity in the expression of the terms of a settlement agreement" may require a hearing "to discern the intent of the parties at the time the agreement was entered and to implement that intent."[5] Ibid. Although the Family Part is vested with greater discretion when interpreting settlement agreements, the judge is still required to "discern and implement 'the common intention of the parties[,]' and 'enforce [the mutual agreement] as written.'" Id. at 46 (alterations in original) (citations omitted) (first quoting Tessmar v. Grosner, 23 N.J. 193, 201 (1957); and then quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).

When interpreting a contract, "a specific, defined term controls a general, undefined term" "so long as it leads to a result in harmony with the contracting parties' overall objective." Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 378 (App. Div. 2017). Therefore, when both general language of a contract and specific language address the same issue, the specific language controls. See, e.g., Bauman v. Royal Indem. Co., 36 N.J. 12, 22 (1961) (stating "[i]n the

---

[5] "[T]he doctrine of contra proferentem, which requires a court to interpret an ambiguous clause in favor of the non-drafting party, usually does not apply in a matrimonial setting because the matrimonial agreement is commonly the product of negotiation, not only over the general terms of the agreement but also over the language in the agreement." Quinn, 225 N.J. at 46.

interpretation of a contractual instrument, the specific is customarily permitted to control the general and this ordinarily serves as a sensible aid in carrying out its intendment"); <u>Homesite Ins. Co. v. Hindman</u>, 413 N.J. Super. 41, 48 (App. Div. 2010) (referencing "the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more general"); <u>Burley v. Prudential Ins. Co. of Am.</u>, 251 N.J. Super. 493, 500 (App. Div. 1991) (recognizing "[w]here two clauses in a contract clearly conflict, the more specific provision . . . usually controls over the more general").

Here, defendant contends Article 7.12 of the PSA provides:

> Notwithstanding any language contained in [<u>Lepis</u>, 83 N.J. 139] and [<u>Crews</u>, 164 N.J. 11], this [a]greement shall be non-modifiable and irrevocable even if any of the following occur, solely or in combination to either or both of the parties;
>
> . . . .
>
> (c) increase or decrease in income of either party regardless of how substantial such change is and regardless of scope or duration of said increase or decrease;
>
> . . . .
>
> Specifically, [the parties] waive any rights they may have under the <u>Lepis</u> decision to argue that subsequent changes and circumstances render <u>the</u>

19

alimony aspects of this [a]greement either unfair or inequitable or subject to modification for any reason whatsoever. It is the specific intention of the parties to estop and prevent each other from seeking any modification of the provisions of this [a]greement recognizing that without such provisions contained herein, neither party would have agreed to the alimony provisions of this [a]greement, the equitable distribution provisions of this [a]greement, and the other terms of this [a]greement. The parties acknowledge the rationale in the Lepis decision has been explained to them in the sense that a substantial change of circumstances would permit either party to make an application to a court of competent jurisdiction to modify the within [a]greement. It is the intention of the parties hereto that the rationale of the Lepis case not apply to any present or future interpretation of the reasonableness of this [a]greement, as they intend, and they acknowledge, that this [a]greement shall express their rights and obligations now and for all time, despite any substantial changes in their monetary circumstances.

[(Emphases added)].

Defendant's argument relies on the second paragraph of Article 7.12, which specifically references the alimony provision of the PSA. Article 2, "Support and Maintenance of Husband and Wife," contains an anti-Lepis clause, whereas Article 4, "Support, Maintenance and Education of Child," does not.

The second sentence of Article 7.12 reads:

It is the specific intention of the parties to estop and prevent each other from seeking any modification of the provisions of this [a]greement recognizing that without

20

such provisions contained herein, neither party would have agreed to the alimony provisions of this [a]greement . . . and the other terms of this [a]greement.

[(Emphases added).]

In the matter under review, the judge found there was no change of circumstance warranting a modification of child support, and defendant had not met his burden of proof on this issue. The judge emphasized she was not ruling that child support could not be modified, but noted there was no reason to change the imputations of income set forth in the PSA. Because plaintiff agreed to continue to be imputed $60,000 per year of earned income even though she is no longer employed, and defendant's income, earned and potentially unearned, is in excess of the $50,000 amount he agreed to be imputed to him in the PSA, the judge correctly denied his motion to recalculate child support on this basis alone.

Moreover, we conclude there was no need for the judge to address whether the parties anti-Lepis clause pertains to both alimony and child support because defendant did not demonstrate a prima facie case of changed circumstances or other good cause in order to even reach that analysis. Therefore, we discern no basis to address defendant's argument on this issue because it was not adjudicated by the Family Part judge, and we decline to exercise original

21

jurisdiction.[6] See also Rivera v. Union Cnty. Prosecutor's Off., ___ N.J. ___, ___ (2022) (slip op. at 10).

Saliently, we note defendant failed to comply with Rule 5:5-4(a)(4), which provides for "[m]otion attachments for modification or termination of alimony or child support not based on retirement":

> When a motion or cross[-]motion is filed for modification or termination of alimony or child support, other than an application based on retirement filed pursuant to N.J.S.A. 2A:34-23(j)(2) and (j)(3), the movant shall append copies of the movant's current [CIS] and the movant's [CIS] previously executed or filed in connection with the order, judgment or agreement sought to be modified. If the court concludes that the party seeking relief has demonstrated a prima facie showing of a substantial change of circumstances or that there is other good cause, then the court shall order the opposing party to file a copy of a current [CIS].

In support of his motion, defendant submitted a current CIS but attached an incomplete tax return in contravention of Rule 5:5-4(a)(4). Notably, no

---

[6] Appellate courts can "exercise ... original jurisdiction as is necessary to the complete determination of any matter on review." R. 2:10-5. That power should be invoked "sparingly," State v. Jarbath, 114 N.J. 394, 412 (1989), and is generally used when the record is adequately developed and no further fact-finding is needed, Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013); State v. Santos, 210 N.J. 129, 142, 42 (2012). Original jurisdiction can also be invoked "to eliminate unnecessary further litigation," Santos, 210 N.J. at 142 or when the public interest favors "an expeditious disposition of [a] significant issue[ ]," Karins v. City of Atlantic City, 152 N.J. 532, 540-41 (1998).

Schedule E (Form 1040), Supplemental Income and Loss to report income and expenses related to defendant's rental apartment was included, thereby precluding an analysis of the anti-Lepis provision in the PSA as it pertains to child support. Therefore, the aspect of defendant's motion seeking to recalculate child support did not even have to be considered by the judge and could have been denied without prejudice to defendant refiling the motion with the required Rule 5:5-4(a)(4) documentation included.[7] Therefore, we discern no error, let alone reversible error, in the judge's denial of defendant's motion insofar as it sought to recalculate child support, which was without prejudice to a future adjudication as to the anti-Lepis argument.

Any arguments asserted on defendant's behalf we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] It is unclear from the record whether defendant submitted his prior CIS's with his motion, which is also required for an adjudication of the child support issue.

A-1112-20