NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5047-14T1

JAIME TAORMINA BISBING,

    Plaintiff-Respondent,

v.

GLENN R. BISBING, III,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 6, 2016**
>
> **APPELLATE DIVISION**

Argued March 2, 2016 — Decided April 6, 2016

Before Judges Fuentes, Koblitz, and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-19-324-14.

Matheu D. Nunn argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Mr. Nunn, of counsel; Mr. Nunn and Bonnie C. Frost, on the brief).

Paul H. Townsend argued the cause for respondent (Townsend, Tomaio & Newmark, LLC, attorneys; Mr. Townsend, of counsel; Mr. Townsend, Maria A. Giammona, and Valerie R. Wane, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

In this appeal, we examine the effect of a non-relocation agreement on a subsequent request by the primary custodial

parent to relocate to a distant state. Defendant Glenn R. Bisbing, III[1] appeals from the Family Part's April 24, 2015 and July 14, 2015 orders allowing his former wife, plaintiff Jaime Taormina Bisbing, to relocate with the parties' then eight-year-old twin girls without first holding a plenary hearing. We reverse and remand for a plenary hearing.

The parties were married in 2005 and the girls were born in November 2006. Both parties were employed as highly-paid professionals, with Jaime earning more money than Glenn.

In early 2013, Glenn investigated job opportunities in Colorado and California. The parties separated in August, and in November of that year, Jaime began a long-distance relationship with a resident of Utah who had children from a previous marriage. The Utah resident is the owner of a business in Idaho and also has business interests that require him to travel frequently to California and Louisiana.

On March 8, 2014, the parties entered into a marital settlement agreement (MSA) following the parties' participation, without counsel, in mediation with an attorney-mediator. The parties agreed to joint legal custody. They agreed that Jaime

---

[1] We will call the parties by their first names for ease of reference. No disrespect is intended.

would have primary residential custody, with the condition that she not relocate out of state.

Pursuant to Article 1.2 of the MSA, Jaime also agreed to "broad, reasonable and liberal timesharing" of the children with Glenn. Glenn was provided parenting time with his daughters on Father's Day, Glenn's birthday, "every other weekend and on one weeknight during the weeks when he does not have parenting time." Glenn had parenting time on two continuous weeks during the summer; and every other Thanksgiving, Christmas Eve, Christmas Day, New Year's Eve, New Year's Day, and the children's school breaks. Under Article 1.3, both parties were also "entitled to attend all of the Children's sporting and extracurricular activities no matter whose parenting day they might fall on."

Article 1.9 <u>Relocation</u> provides the following terms regarding a change of residence:

> The parties agree that each shall inform the other with respect to any change of residence concerning himself or herself or the said minor Children for the period of time wherein any provision contained in this Agreement remains unfulfilled. The parties represent that they both will make every effort to remain in close proximity, within a fifteen (15) minute drive from the other. Neither party shall permanently relocate with the Children from the State of New Jersey without the prior written consent of the other. Neither parent shall relocate intrastate further than 20 miles from the

other party. In the event either party relocates more than 20 miles from the other party, the parties agree to return to mediation to review the custody arrangement. In the event a job would necessitate a move, the parties agree to discuss this together and neither will make a unilateral decision. Neither party shall travel with the minor Children outside of the United States without the prior written consent of the other party.

The parties hereby acknowledge that the Children's quality of life and style of life are provided equally by Husband and Wife.

The parties hereby acknowledge a direct causal connection between the frequency and duration of the Children's contact with both parties and the quality of the relationship of the Children and each party.

The parties hereby acknowledge that any proposed move that relocates the Children any further away from either party may have a detrimental impact upon the frequency and duration of the contact between the Children and the non-moving party.

On April 16, 2014, a final judgment of divorce (JOD) was entered incorporating the MSA. According to Glenn, after the divorce, he was "intricately involved in all aspects of the girls' lives." He coached their soccer team, took them to ski club activities, and attended their school events.

One month after the divorce, Jaime sent an e-mail to Glenn informing him that, although she received no alimony, she was planning to leave her job on July 1, 2014, to become a full-time stay-at-home parent, which she did.

On January 8, 2015, less than nine months after the divorce, Jaime called Glenn to notify him of her intention to get married to the Utah resident and relocate to Utah. Jaime asked for Glenn's permission to move with their daughters to Utah. Glenn refused, stating, "You can move, just leave the girls with me."

On March 16, eleven months after the divorce, Jaime filed a motion seeking to relocate with the children to Utah without the need for a plenary hearing. The court granted the motion allowing relocation without holding a plenary hearing on the condition that a visitation schedule be established through mediation, signing the order on April 24, 2015. On July 14, 2015, after an unsuccessful mediation, with only Jaime suggesting a parenting plan, the court issued a supplemental order establishing a parenting time and communication schedule using most of Jaime's suggestions.[2]

Eleven days later, Jaime and the children "left for a vacation to Utah." Three days thereafter, Jaime permanently relocated with the children in Utah.

---

[2] We have reviewed the court's May 18, 2015 letter supplementing the reasons placed on the record as well as its written statement of reasons attached to the July 14 order. See R. 2:5-1(g) (permitting the trial judge to "supplement a filed opinion").

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Unlike findings of fact, "appellate review of legal determinations is plenary." State v. Reece, 222 N.J. 154, 167 (2015) (quoting State v. Handy, 206 N.J. 39, 45 (2011)). Here, the family court did not hold a plenary hearing, nor was it familiar with the parties through extensive motion practice.

We reverse and remand for a plenary hearing to determine first whether Jaime negotiated the MSA in bad faith. If so, a "best interests of the child" analysis must be conducted. Second, if bad faith is not demonstrated, the trial court must then consider whether Jaime proved a substantial unanticipated change in circumstances warranting avoidance of the agreed-upon non-relocation provision and simultaneously necessitating a Baures[3] analysis. If the MSA was negotiated in good faith, yet Jaime fails to satisfy her burden of proving a substantial unanticipated change in circumstances, the court must apply the same "best interests" analysis as required in the first step. Only if Glenn is unable to demonstrate that Jamie negotiated the

---

[3] Baures v. Lewis, 167 N.J. 91, 116-18 (2001).

MSA in bad faith and Jamie proves a substantial unanticipated change in circumstances occurred should she be accorded the benefit of the Baures analysis.

II

The legal authority governing a custodial parent's request for relocation is extensive and well-established. Pursuant to Title Nine, the children of divorced parents shall not be removed from the Superior Court's jurisdiction "without the consent of both parents, unless the court, upon cause shown, shall otherwise order." N.J.S.A. 9:2-2. One of the underlying purposes of the statute involving removal is to preserve the parent-child relationship of the non-custodial parent and the child. See Cooper v. Cooper, 99 N.J. 42, 52-53, 55 (1984).

After a divorce, a custodial parent's request to relocate with the parties' children presents our courts "with difficult and often heart-wrenching decisions." Morgan v. Morgan, 205 N.J. 50, 54 (2011). "In circumstances where the [non-custodial] parent has a healthy, meaningful relationship and bond with the child[ren], there are few circumstances where the judicial determination [of removal] will not adversely affect the parties and the child." O'Connor v. O'Connor, 349 N.J. Super. 381, 384 (App. Div. 2002). Although relocation was rarely permitted by

our courts in the past, our Supreme Court recently discussed a more modern view:

> Over time, there has been a shift in relocation law across the country. That shift has resulted from several factors: the mobility of the population, advances in technology, the notion that what is good for the custodial parent is good for the children of the divorce, and a renewed recognition that "[t]he custodial parent who bears the burden and responsibility for the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent."
>
> [Morgan, supra, 205 N.J. at 62 (alteration in original) (citations omitted) (quoting Cooper, supra, 99 N.J. at 55).]

"[I]n determining the standard to be applied to a parent's removal application, the focus of the inquiry is whether the physical custodial relationship among the parents is one in which one parent is the 'primary caretaker' and the other parent is the 'secondary caretaker.'" O'Connor, supra, 349 N.J. Super. at 385. If the parents truly share both physical and legal custody, "the party seeking the change in the joint custodial relationship must demonstrate that the best interests of the child would be better served by residential custody being primarily vested with the relocation parent." Ibid. If one parent serves as the primary caretaker, the custodial parent's request to relocate a child is governed by the Baures two-part

test.  <u>Baures</u>, <u>supra</u>, 167 <u>N.J.</u> at 116-19, 122.  Pursuant to <u>Baures</u>'s two-pronged inquiry, the moving party has the burden of proving by a preponderance of the credible evidence "that (1) there is a good faith reason for the move and (2) that the move will not be inimical to the child's interests."  <u>Id.</u> at 118.  To determine whether to order removal, a court must assess twelve "factors relevant to the plaintiff's burden of proving good faith and that the move will not be inimical to the child's interest."  <u>Id.</u> at 116-17.

The initial burden on the movant "is not a particularly onerous one."  <u>Id.</u> at 118.  Once the moving party makes a prima facie showing, the burden shifts to the non-moving party to "produce evidence opposing the move as either not in good faith or inimical to the child's interest."  <u>Id.</u> at 119.

The <u>Baures</u> standard "accords particular respect to the custodial parent's right to seek happiness and fulfillment." <u>MacKinnon v. MacKinnon</u>, 191 <u>N.J.</u> 240, 257 (quoting <u>Baures</u>, <u>supra</u>, 167 <u>N.J.</u> at 97), <u>stay denied</u>, 551 <u>U.S.</u> 1177, 128 <u>S. Ct.</u> 7, 168 <u>L. Ed.</u> 2d 784 (2007).  We note, in the context of this case, the late Justice Schreiber's concurrence, which stated that "[s]ubstantial deference is to be accorded to parents' mutually-agreed-upon decisions with respect to custody and visitation," including "the parents' agreement regarding the

physical situs of the children." Cooper, supra, 99 N.J. at 66 (Schreiber, J., concurring).

A plenary hearing is necessary "where a prima facie showing has been made that a genuine issue of fact exists bearing upon a critical question." See Barblock v. Barblock, 383 N.J. Super. 114, 123 (App. Div.) (quoting Pfeiffer v. Ilson, 318 N.J. Super. 13, 14 (App. Div. 1999)), certif. denied, 187 N.J. 81 (2006). Here, Glenn raises the question of whether Jaime negotiated the custody provisions in good faith. In Shea v. Shea, the parties entered into an agreement establishing "joint legal custody, with [the] defendant designated as parent of primary residence." 384 N.J. Super. 266, 270 (Ch. Div. 2005). Four months later, the defendant filed an application seeking permission to relocate with the child. Id. at 268-69. The plaintiff argued that the defendant manipulated the Baures procedures "by first settling the divorce, and immediately thereafter filing for removal, effectively depriving [the plaintiff] of the opportunity to contest custody." Id. at 268. He alleged that he never would have agreed to the settlement "had he known that [the] defendant was shortly thereafter going to seek an order for out-of-state removal." Ibid. In a published opinion, Judge Millard determined that the parties were entitled to a plenary hearing. Id. at 273-74. Judge Millard opined:

> It seems only fair and equitable, that where a request for removal comes shortly after the settlement of the Final Judgment of Divorce, and the material facts and circumstances forming the good faith reason for the removal request were known at the time of the entry of the final judgment, a party opposing the removal be entitled to contest custody under the best interests analysis, irrespective of whether the parties had a true shared parenting arrangement. In effect, the party opposing removal is restored to the position he or she held prior to the Final Judgment of Divorce. To rule otherwise could potentially encourage disingenuous settlements, encourage a party to use the <u>Baures</u> line of cases as a sword, or alternatively compel a cautious party to exhaustively litigate custody when not truly necessary. The moving party must, of course, initially make out a prima facie case for removal under <u>Baures</u> (good faith reason for removal and not inimical to interests of child) before the court would entertain such a custodial application.
>
> [<u>Id.</u> at 271-72.]

Unlike in <u>Shea</u>, when Jaime entered into the agreement, she may not have definitely known of "the material facts and circumstances forming the good faith reason for the removal request" — that she was going to marry the Utah resident. <u>See</u> <u>id.</u> at 271. The parties here, however, agreed to a non-relocation provision that did not exist in <u>Shea</u>. Thus, for reasons as compelling as those in <u>Shea</u>, Glenn is entitled to a plenary hearing to establish whether Jaime manipulated the situation to obtain favorable <u>Baures</u> removal procedures. <u>See</u>

11                                                          A-5047-14T1

id. at 271-72.  If Glenn proves the existence of manipulation, "fundamental fairness" requires the trial court to apply the "best interests of the child" standard rather than the Baures standard.  See id. at 273-74.

Because Jaime sought to relocate shortly after entering into a non-relocation agreement, we adopt the procedures in Shea and remand to hold a plenary hearing.  The parties entered into an MSA in March 2014, which was incorporated into the parties' JOD in April 2014.  At the time of the agreement, Jaime had been dating her current husband for approximately four months.  She left her well-paying job to stay home with her children three months after her divorce, and informed Glenn of her impending nuptials and desire to relocate six months after that.  Similar to the situation in Shea, the close proximity between the parties' agreement and Jaime's plans to relocate provides evidence of suspicious circumstances requiring a plenary hearing.  See id. at 269, 273.  If, after holding a hearing, the family court finds that Jaime negotiated in bad faith, it should then analyze the relocation request under a "best interests" analysis.

III

If the family court finds that Jaime negotiated in good faith, without manipulative intent, the court must still

consider the impact of the carefully considered non-relocation provision.

"New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "The basic contractual nature of matrimonial agreements has 'long been recognized.'" Sachau v. Sachau, 206 N.J. 1, 5 (2011) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981); Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div.), certif. denied, 142 N.J. 455 (1995); Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995)). Consensual settlement agreements are subject to the "changed circumstances" doctrine. Lepis v. Lepis, 83 N.J. 139, 148 (1980). "A party seeking modification of a judgment incorporating a [property settlement agreement] regarding custody or visitation, must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child." Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div.), certif. denied, 178 N.J. 34 (2003); see Walles v. Walles, 295 N.J. Super. 498, 517 (App. Div. 1996) (stating that "a party seeking modification of a judgment of divorce must demonstrate a substantial change in circumstances"). When conducting a change in circumstances

analysis, the court must address all relevant considerations, "including the parties' understanding at the time of execution of the [marital settlement agreement]." <u>Glass v. Glass</u>, 366 <u>N.J. Super.</u> 357, 376 (App. Div.) (requiring the court to consider "the reasonable expectations" of the contracting parties), <u>certif. denied</u>, 180 <u>N.J.</u> 354 (2004).

Article 1.9 of the MSA requires the prior written consent of the other party before relocation. The language of the MSA and the parties' conduct evidence an intent for the children to remain in New Jersey. Jaime acknowledged that the relocation provision was negotiated between the parties. <u>See</u> <u>Minkowitz v. Israeli</u>, 433 <u>N.J. Super.</u> 111, 138 (App. Div. 2013) (stating that an agreement reached voluntarily "should be enforced"). Thus Jaime, in a written and voluntarily agreed-upon contract, specifically surrendered her "freedom to seek a better life" in another state while obtaining primary custody of the children, and was well aware of that agreement when she chose to remarry and move far away. <u>See</u> <u>Morgan</u>, <u>supra</u>, 205 <u>N.J.</u> at 62 (quoting <u>Cooper</u>, <u>supra</u>, 99 <u>N.J.</u> at 55).

Two central reasons for moving are for new employment or remarriage. <u>See</u> <u>Baures</u>, <u>supra</u>, 167 <u>N.J.</u> at 96 ("[R]elocation for employment purposes is common. On a personal level, people remarry and move away."); <u>see, e.g.</u>, <u>Morgan</u>, <u>supra</u>, 205 <u>N.J.</u> at

56 (remarriage); MacKinnon, supra, 191 N.J. at 244 (employment). In their agreement, the parties discussed relocation on the basis of new employment. Remarriage, however, was not mentioned in the agreement. Perhaps testimony would reveal whether such an eventuality was considered. See Pacifico v. Pacifico, 190 N.J. 258, 267 (2007) (permitting an evidentiary hearing to determine the parties' intentions when entering into a property settlement agreement).

On remand, if Glenn is unable to demonstrate bad faith, Jaime has the opportunity of proving a substantial unanticipated change in circumstances to trigger the court's consideration of the Baures factors. If the court determines that the Baures procedure is appropriate, then it must gauge as one of the factors, as it failed to do in its decision on the removal motion, the effect on the children of moving away from both parents' extended families. Baures, supra, 167 N.J. at 117 (identifying as one of the factors "the effect of the move on extended family relationships").

If Jaime is unable to demonstrate an unanticipated substantial change in circumstances, even if she negotiated the MSA in good faith, the family court must apply the "best interests" standard to determine removal. If Jaime's remarriage was anticipated, or should have been anticipated, then Glenn

should be able to rely on the non-relocation provision. Although <u>Baures</u> "accords particular respect to the custodial parent's right to seek happiness and fulfillment," Jaime bargained away this preference and the non-relocation provision should be enforced to the limited extent of modifying the usual, preferential treatment accorded the primary caretaker's good faith desire to relocate. <u>See</u> <u>id.</u> at 97.

Reversed and remanded to the Family Part for a plenary hearing to be conducted in an expedited fashion within sixty days. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION