**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2817-24

MARY E. OXLEY DEAN,

     Plaintiff-Respondent,

v.

JOHN G. DEAN, IV,

     Defendant-Appellant.

_____

Argued December 2, 2025 – Decided March 23, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0871-20.

Robert H. Siegel argued the cause for appellant (Siegel Law, attorneys; Robert H. Siegel, of counsel and on the briefs).

Rebecca A. Hand argued the cause for respondent (Cosner Law Group, attorneys; Rebecca A. Hand, on the brief).

PER CURIAM

Defendant John G. Dean, IV, appeals from the Family Part's April 22, 2025 order denying his request for reconsideration of the March 10, 2025 order, which denied his request for modification or termination of alimony and granted in part plaintiff Mary E. Oxley Dean's request for counsel fees. We affirm.

I.

The parties were married for approximately thirteen years, from October 26, 2006, until their divorce on December 17, 2019. The parties voluntarily entered into a Marital Settlement Agreement (MSA) on August 7, 2019, which was initially incorporated into their Judgment of Divorce from Bed and Board and later into their Final Judgment of Divorce.

During the marriage, defendant was employed with the U.S. Department of Homeland Security, and at the time of the parties' divorce, he was earning a base salary of $151,291. Defendant agreed to pay limited durational alimony to plaintiff of $47,000 per year, calculated upon his base salary, his Veterans Administration pension (VA pension) of $47,138 per year, and his yearly Veterans (VA) disability income of $22,512 for a total annual income of $216,213. According to paragraph 1.3 of the MSA, defendant's alimony obligation would terminate when defendant "actually retires and [plaintiff]

A-2817-24

commences receipt of 65% of [defendant's] pension and Thrift Savings Plan" (TSP).

Relevant to this appeal, paragraph 2.9 of the MSA addressed defendant's VA pension, federal government pension (FERS)[1] and TSP. The MSA noted that the VA pension was "already in pay status," and plaintiff would be "named [a]lternate [p]ayee for the amount of [fifty dollars] per month of this benefit in order for her to continue her health coverage, if necessary." Plaintiff was named as defendant's beneficiary on this account to receive "pre and post [s]urvivor [a]nnuity." No further distribution of this account was designated.

The parties agreed that plaintiff would receive 65% of the FERS pension "at the time of [defendant's] retirement." They also agreed to have a Qualified Domestic Relations Order (QDRO) prepared "within thirty (30) days of the execution of this [MSA]" to "ensure segregation of [plaintiff's] share." As for the TSP account, the parties agreed that plaintiff would also receive 65% of that account "at the time of [defendant's] retirement," and a QDRO would be

---

[1] Although not included in the record, FERS is an acronym for the Federal Employees Retirement System. U.S. Office of Personnel Management, FERS Information, OPM (March 12. 2026), https://www.opm.gov/retirement-center/fers-infrmation/.

A-2817-24

prepared "to ensure partial immediate segregation of 65% to [plaintiff] . . . within thirty (30) days after the execution of this [MSA]."

Defendant's federal employment ended on January 31, 2024. In April 2024, he accepted a new full-time position with Syracuse University as Associate Director of Defense Programs, earning approximately $140,000 annually.

However, before he started his new position, defendant filed a motion to terminate or modify alimony, resulting in the February 22, 2024 order. Although the family court did not grant defendant's request, the court directed plaintiff "immediately upon [] receipt of FERS pension benefits, [to] notify [d]efendant, and the parties shall thereafter enter into a [c]onsent [o]rder terminating [d]efendant's alimony obligation, effective the date [p]laintiff begins receiving her FERS pension benefits." The court based its decision on defendant's "representation that he [was] retiring, which the [c]ourt interpret[ed] as a permanent retirement, not merely moving from one position to the next after a brief (or more long term) pause."

On April 2, 2024, defendant filed another motion seeking to terminate his alimony obligation. On June 7, 2024, the court denied defendant's request to terminate his alimony obligation without prejudice. The order, in part, stated

that the parties, "by consent," agreed defendant's alimony obligation would end "upon [p]laintiff's receipt of her monthly FERS pension benefits, as well as her receipt of her portion of the [TSP] monies[,]" which had not yet occurred.

In December 2024, defendant stopped making his alimony payments without the court's approval. Shortly thereafter, plaintiff filed an enforcement motion, seeking to compel defendant to resume making his alimony payments. Defendant filed a cross-motion—his third attempt—to terminate alimony based on his purported retirement.

On March 10, 2025, the family court issued an order granting plaintiff's enforcement motion, finding defendant in violation of litigant's rights, directing defendant to resume alimony payments, denying defendant's cross-motion to terminate alimony, and awarding plaintiff counsel fees of $2,500. The court explained that defendant "testified on February 22, 2024, in response to the [c]ourt's questions, that he was fully retired and that he did not intend on obtaining alternate employment at that time." Within two months of that hearing, defendant accepted new employment. Thus, the court concluded defendant acted in bad faith "by claiming he was fully retired when he really had every intention of seeking new employment elsewhere."

A-2817-24

Defendant filed for reconsideration, which the court denied on April 22, 2025.

On appeal, defendant argues the family court erred by denying reconsideration of the March 10, 2025 order and misapplying the Supreme Court's holding in Innes v. Innes, 117 N.J. 496, 514 (1990), and by denying his request for a plenary hearing. Defendant also claims the court erred in its analysis of defendant's modification request by using his time-of-divorce income rather than his income at the time of retirement.

## II.

### A.

Our court reviews a trial court's decision on a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020); Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022); Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2026).

We ordinarily accord great deference to discretionary decisions of Family Part judges, in recognition of the family courts' "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (citing Gac v. Gac, 186 N.J. 535, 547 (2006)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.

Defendant contends the family court erred by misapplying the reconsideration standard under Rule 4:49-2 and disregarding the holding of Innes. 117 N.J. at 514. Specifically, defendant argues the court erred by underestimating the amount by which his income had decreased and by including his VA pension as income in contravention of the Innes holding, which prohibits double counting of income "generated by a retirement share that has been equitably distributed." Id. at 514. Plaintiff disagrees, arguing that the

7

family court neither misapplied the reconsideration standard nor disregarded the holding of Innes.

Under Rule 4:49-2, motions for reconsideration are granted only under very narrow circumstances in which either: "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citations omitted).

Defendant initially claims that the court erred in its analysis of whether changed circumstances warranting a modification or termination of alimony had occurred because it relied upon defendant's time-of-divorce base salary of $151,291 rather than his income of approximately $180,000 at the time his employment with the Department of Defense ended. This assertion is without merit.

"Parties to a divorce action may enter into voluntary agreements governing the amount, terms, and duration of alimony, and such agreements are subject to judicial supervision and enforcement." Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 203 (1999)). Such agreements executed "voluntarily and understandingly for the purpose of

settling the issue of [alimony] are specifically enforceable, but only to the extent that they are just and equitable." Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970) (citations omitted).

Agreements may be modified "upon a showing of changed circumstances." Quinn, 225 N.J. at 49 (quoting Berkowitz, 55 N.J. at 569). When a party moves to terminate or reduce alimony, the court must first determine whether the movant has made a prima facie showing of changed circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014).

The changed circumstances analysis begins with the clear and unequivocal terms of the MSA. See Bisbing v. Bisbing, 445 N.J. Super. 207, 218 (App. Div. 2016). When assessing changed circumstances, a family court must examine the parties' current situation and compare it to the situation when the support obligation was initially entered. Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) ("It is clear that the changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations."); see also Deegan v. Deegan, 254 N.J. Super. 350, 354-55 (App. Div. 1992) ("An analysis of 'changed circumstances' is not limited to what the parties might have contemplated at the time of the divorce

A-2817-24

. . . [but rather] 'whether the change in circumstances is continuing and whether the agreement or decree has made explicit provision for the change.'" (quoting Lepis, 83 N.J. at 152)).

Here, the terms of the MSA pertaining to alimony provided for the factors upon which alimony was based, which included defendant's base salary of $151,291, his VA pension of $47,138, and his VA disability income of $22,512, totaling gross annual income of $216,213.  Nothing in the MSA nor in caselaw supports defendant's contention that his base salary of approximately $180,000 at the time he left his employment with the Department of Defense should be used to assess whether his financial circumstances have substantially changed "impair[ing] [his] ability to support himself."  Lepis, 83 N.J. at 157.  Thus, the family court's use of defendant's income as set forth in the MSA as a starting point for the changed circumstances analysis was not palpably incorrect or irrational; nor did the court overlook any legal authority on this issue.

Defendant next contends the court misapplied Innes by including the VA pension and disability benefits in calculating income.  He argues that the court ignored Innes by including the VA pension as income when it had been equitably distributed.

In Innes, the Court held:

> What the trial court can no longer do, however, is determine alimony by considering income generated by a retirement share that has been equitably distributed, either at the time of divorce or when it considers a modification application. . . . Hence, we hold that payments generated by pension benefits that had been previously equitably distributed are not income for purposes of alimony modification.
>
> [117 N.J. at 514.]

The Court held that "it is inappropriate to make equitable distribution of a retirement benefit and then consider that distributed share for purpose of determining alimony" because "'double-dipping' of this asset [is] improper." Ibid.

The Court's holding in Innes has no application here because the VA pension, as the unambiguous terms of the MSA confirm, was included as income for alimony purposes and were not equitably distributed. Paragraph 1.1 of the MSA expressly states that the VA pension and VA disability income were included as income for the purpose of calculating defendant's biweekly alimony obligation of $1,858. Moreover, the VA pension was in "pay status," and therefore, was part of defendant's income stream. On the contrary, the FERS and TSP accounts were to be divided through QDROs, with plaintiff receiving a designated share of those assets. Accordingly, we discern no error in the court

A-2817-24

considering those same income streams in evaluating defendant's post-judgment modification request.

C.

Defendant next argues that the family court erred by denying his request for a plenary hearing on the issue of whether the VA pension should be included as income for purposes of determining this post-judgment modification request. A plenary hearing is necessary only when a genuine issue of material fact exists. Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006) (citing Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)). "[N]ot every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing." Colca v. Anson, 413 N.J. Super. 405, 422 (App. Div. 2010) (quoting Harrington v. Harrington, 281 N.J. Super. 39, 47 (1995)) (alteration in original).

> [T]o be entitled to a hearing on whether a previously-approved support award should be modified, the party moving for the modification bears the burden of making a prima facie showing of changed circumstances. Specifically, the party seeking modification of an alimony award must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself.
>
> [Palombi, 414 N.J. Super. at 290-91 (quoting Crews v. Crews, 164 N.J. 11, 28 (2000) (citations omitted) (internal quotations omitted)) (alteration in original).]

12

The MSA provides for termination of alimony upon the following conditions: (1) defendant's actual retirement; and (2) plaintiff's receipt of both the FERS and TSP distributions. It is undisputed that plaintiff remains employed full-time, earning approximately $140,000, and that the TSP account has not yet been distributed. The record is void of any updated information regarding defendant's VA pension or VA disability income. Therefore, the family court did not abuse its discretion in not granting a plenary hearing because defendant did not meet the threshold showing of changed circumstances and failed to demonstrate the existence of a genuine issue of material fact entitling him to a plenary hearing.

D.

Defendant contends the family court erred in not granting reconsideration of paragraphs one through four of its March 10, 2025 order. Paragraph two of the order granted plaintiff's requests for attorneys' fees. Our review of this claim is impeded because defendant fails to articulate the basis for his assertion that the court erred in not reconsidering this specific provision of the March 10, 2025 order. See R. 2:6-2; cf. Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009) (holding that a complaint is dismissed for failing to articulate a basis for its claim).

A-2817-24

An award of attorneys' fees in family matters rests in the sound discretion of the family court. See N.J.S.A. 2A:34-23a; R. 5:3-5(c). We will overturn the family court's decision concerning an attorney fee award "only on the 'rarest occasion,' and then only because of a clear abuse of discretion." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

In this case, the family court concluded that defendant acted in bad faith because he failed to advise the court in his pleadings of his new employment and testified he was fully retired and did not intend on obtaining alternate employment at that time. The record supports the court's finding of bad faith.

Moreover, paragraph 5.2 of the MSA states: "[s]hould either party fail to abide by the terms of this Agreement, the defaulting party will indemnify the other for all reasonable expenses and costs, including attorneys' fees incurred in successfully enforcing this agreement." Defendant unilaterally ceased making alimony payments in December 2024, and as a result, plaintiff was compelled to file an enforcement motion. The court found defendant in violation of litigant's rights, and therefore, plaintiff prevailed in her enforcement application.

Therefore, we reject defendant's argument that the court erred in not reconsidering the attorney fee award because we discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division