**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3544-23

STACY A. ANDERSON,

    Plaintiff-Respondent,

v.

DAVID W. ANDERSON,

    Defendant-Appellant.

_____

        Submitted October 8, 2025 – Decided May 11, 2026

        Before Judges Smith and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1093-10.

        Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

        Respondent has not filed a brief.

PER CURIAM

Defendant, David Anderson, appeals from a June 5, 2024 order, which denied his request for child support modification, retroactive child support modification, reduction in alimony arrearages, and reduction in the allocation of shared child-related expenses. He claims the trial court erred in: (1) failing to conduct a plenary hearing regarding changed circumstances that would warrant a downward modification of child support and retroactive child support; (2) declining to address his alimony and alimony arrearages based on plaintiff's cohabitation and/or remarriage; and (3) declining to recalculate each party's responsibilities for childcare and related expenses, including college and unreimbursed medical costs.

We conclude defendant set forth sufficient evidence of a significant decrease in income after losing his employment, and the trial court erred in finding defendant voluntarily underemployed without substantiating that finding or affording him the benefit of discovery or a plenary hearing regarding changed circumstances. Therefore, we reverse and remand that part of the order for discovery and a plenary hearing, if the court deems it necessary, after discovery.

The court did not make a substantive ruling with respect to plaintiff's admitted, long-term cohabitation followed by remarriage, instead ordering the parties to resolve the issue through mediation. Since mediation had already

2

proven ineffective for the parties on this very issue previously, and, because the parties were unable to resolve it, the court was obligated to decide it. We remand for a plenary hearing as to the timing of the inception of cohabitation, and whether any alimony paid or alimony arrearages should be modified accordingly.

Finally, the allocation of responsibility for various childcare expenses, including college costs and unreimbursed medical expenses following emancipation, is directly impacted by the changed circumstances analysis, and the court is required to review that issue if it finds changed circumstances warranting modification.

## I.

The record before us demonstrates the parties were married on October 8, 1993, and share three children: W.A., born in 1994, T.A., born in 1995, and C.A., born in 2001. Plaintiff filed for divorce on January 4, 2010. The parties executed a Matrimonial Settlement Agreement (MSA) regarding their seventeen-year marriage, which was incorporated into their Dual Judgment of Divorce on January 4, 2012.

In 2013, plaintiff began cohabiting with her now husband, whom she married on November 7, 2020. On May 30, 2014, the trial court ordered the

3

probation department to "vacate all alimony and child support arrears through May 1, 2014" pursuant to mutual consent of the parties. That consent order stated the modification reflected defendant's then unemployment and plaintiff's cohabitation. Plaintiff agreed to discontinue cohabitation in the consent order. The consent order further stipulated that

> [e]ffective January 1, 2016, [defendant's] support obligation (base and bonus alimony and child support) shall revert to that which it would be pursuant to the terms of the parties' MSA, unless . . . [plaintiff] is continuing to cohabit as of said date, in which case the parties will execute a Consent Order within fifteen (15) days of said date, which maintains alimony and child support at the 2015 levels of support pending further agreement and/or [o]rder of the [c]ourt.

The consent order stated defendant's alimony and child support arrears amounted to $24,736.34 as of May 28, 2014. The trial court, however, ordered the parties to come to an amicable agreement and resolve the amount due between themselves. If the parties were unable to do so, the consent order required them to attend mediation to resolve the issue.

On July 31, 2017, T.A. was emancipated by court order. The court later recalculated defendant's child support obligation to reflect the emancipation of the parties' second child, leaving only C.A. unemancipated.

4

In November 2018, defendant was terminated from his position at Morgan Stanley. Defendant claimed he was unable to find subsequent employment "with equal or similar wages" due to his age, 55, and level of experience. Following his unemployment, defendant claimed he submitted numerous job applications but did not secure comparable employment. From March 2019 to October 2019, defendant received $250 in weekly unemployment benefits. However, due to a severance package, defendant reported $198,000 in earned income in 2019.

In 2019, defendant filed for bankruptcy. On April 22, 2019, during bankruptcy proceedings, the parties agreed "to attend mediation outside of bankruptcy court in order to reach a resolution regarding the true amount that needs to be paid to [plaintiff] for domestic support obligation arrears through the Chapter 13 Plan." The amount in controversy was the same $24,736.34 mentioned five years earlier in the 2014 consent order.

In August 2019, after C.A. began attending college, defendant moved to emancipate her. The application was denied on April 17, 2020, due to C.A. "attending college on a continuous, full-time basis, in accordance with Paragraph 26 of the parties' Matrimonial Settlement Agreement." In 2020, defendant alleged his income was reduced to $36,000, which consisted of income from an annuity and working "odd jobs."

5

A-3544-23

On October 13, 2021, defendant, now represented by counsel, filed motions to:

> (1) [reduce] . . . his child support obligation due to changed circumstances; (2) [eliminate] . . . alimony arrearage; (3) [permit] . . . [defendant] the right to claim the parties' daughter as an income tax exemption for the next two years; (4) [recalculate] the parties' respective responsibilities for expenses regarding their unemancipated child; and (5) [be granted] further relief as the court deem[ed] equitable and just.

On December 3, 2021, the trial court issued an order permitting defendant to claim C.A. as a dependent on his taxes in 2021 and 2022. As to the other requested relief, the trial court ordered the parties to attend mediation. This was the third time the parties were ordered to attend mediation to resolve their issues. The parties attended mediation in 2022, however, they could not resolve the $24,736.34 alimony arrears issue.

On January 23, 2024, plaintiff's counsel sent the court a letter detailing a list of unresolved issues from defendant's initial motion filed in October 2021. Still at issue were:

> 1. Unresolved support arrears in the amount of $24,736.14, arising from the May 30, 2014 Order . . . .
>
> 2. . . . 62% of the children's shared expenses, including college, health insurance and unreimbursed medicals, auto insurance, activities and cellular telephones.

6

3. Support arrears pursuant to Probation records, which are identified by USSO of September 6, 2023 at $72,983.82 . . . .

The trial court issued an order on June 5, 2024, denying defendant's requests for modification of child support and retroactive modification of child support. The court also enforced the sixty-two percent payment for child-related expenses set forth in the MSA. It further ordered the parties to "reattend mediation in order to reach a settlement regarding the $24,736.34 in arrears owed by [defendant]." In the accompanying written statement of reasons, the court failed to make findings of fact to support these rulings.

This appeal followed.

II.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). "We 'afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Thus, a court's findings "are binding on appeal so long as [its] determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

A-3544-23

We apply that same deference to a trial court's decision regarding a motion to modify a marital-support obligation. Cardali v. Cardali, 255 N.J. 85, 107 (2023); see also Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) ("Whether [a support] obligation should be modified . . . rests within a Family Part judge's sound discretion"). Thus, a trial court's decision regarding a support obligation should not be disturbed unless "the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013). "When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)).

"Although a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation of the law." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016) (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)). We review questions of law de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

## III.

### A.  Modification of Child Support

We begin our analysis with a review of the applicable legal principles.  In Lepis v. Lepis, 83 N.J. 139 (1980), our Supreme Court recognized seven "'changed circumstances' that warrant modification in a variety of settings."  Id. at 151.  These include an increase or decrease in the supporting spouse's income. Ibid.

The Court explained when a decision to modify child support is at issue, the reviewing court must assess "the child's needs and the relative abilities of the spouses to supply them."  Id. at 152.  The party seeking a modification of child support must make a prima facie showing of changed circumstances before the court, demonstrating the "changed circumstances have substantially impaired the ability to support himself or herself."  Id. at 157; see also Foust v. Glaser, 340 N.J. Super. 312, 317 (App. Div. 2001) ("Failure to adequately consider evidence as to changed circumstances has been deemed reversible error.").

A hearing is required where there is a dispute of a material fact.  Murphy v. Murphy, 313 N.J. Super. 575, 580 (App. Div. 1998); Lepis, 83 N.J. at 159.  A material factual dispute "bear[s] directly on the legal conclusions required to be

made and [such] disputes can only be resolved through a plenary hearing." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 540 (App. Div. 2015). When there is a genuine dispute regarding the accuracy of the financial circumstances of the parties and the supporting party's ability to secure gainful employment, a hearing is necessary. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (noting a hearing is required when there "is a genuine and substantial factual dispute"). At the preliminary stage, where prima facie proof is the standard, it is not necessary that a movant show in detail those employers with whom he was able to secure an interview or the specific means by which he made contact. Those aspects of a movant's application are better explored at a plenary hearing.

Here, the court stated "the [d]efendant is voluntarily under employed due to the drastic change in the [d]efendant's salary" without finding any facts in support of that conclusion. See R. 1:7-4(a); Curtis v. Finneran, 83 N.J. 563, 570 (1980) ("Naked conclusions do not satisfy the purpose of R. 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions.").

Further, support for a child who is enrolled in college and lives away from home for a portion of the year is a changed circumstance. In Jacoby, we

reviewed "whether child support should be reduced when a child resides on campus while attending college." 427 N.J. Super. at 113. We determined the loss of the defendant's income, in conjunction with the defendant's daughter's residence at college, sufficiently established a prima facie showing of changed circumstances warranting review of the child support obligation. Id. at 118-19.

"However, there is no presumption that a child's required financial support lessens because he or she attends college. . . . [C]ourts faced with the question of setting child support for college students living away from home must assess all applicable facts and circumstances . . . ." Id. at 113. A plenary hearing is required "where a prima facie showing has been made that a genuine issue of fact exists bearing upon a critical question." Bisbing v. Bisbing, 445 N.J. Super. 207, 216 (App. Div. 2016) (quoting Barblock v. Barblock, 383 N.J. Super. 114, 123 (App. Div. 2006)). "While we respect the family court's special expertise, a court may not make credibility determinations or resolve genuine factual issues based on conflicting affidavits." K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014).

It is well established if a parent or spouse is found to be voluntarily underemployed without cause, a court shall impute income for the purpose of determining child support or alimony. See Caplan v. Caplan, 182 N.J. 250, 270

(2005) (stating a party's ability to earn income should be "theoretically activated for the purpose of evaluating his support obligation" and the amount of income that "should be imputed to him"); Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999) (stating the potential earning capacity of an individual, rather than actual income, should be considered when fixing the ability to pay child support).

We apply our jurisprudence to the matter at hand.

We first address defendant's claim he is entitled to a modification of child support based upon his changed economic circumstances. Here, the record contains evidence of a prima facie showing of changed circumstances as neither party disputes defendant was terminated from his employment in 2018. C.A. began attending college in 2019. The trial court was required to make findings as to whether defendant's termination and subsequent lack of comparable employment warranted a modification of child support. It was also required to make findings as to whether C.A.'s attendance at college away from home in 2019 required a second modification of child support. For these reasons, defendant has presented a prima facie showing of changed circumstances.

The trial court's order concluded defendant was voluntarily underemployed and denied defendant's motion for modification of child support

without corresponding findings of fact. This contravenes established case law. Whether defendant made good faith efforts to seek comparable employment and was unable to secure it, and whether some lesser sum of income should be imputed to him for child support purposes are genuine issues of fact that generally cannot be resolved without a plenary hearing and credibility determinations. See Bisbing, 445 N.J. Super. at 216.

Because defendant demonstrated a prima facie case of changed circumstances and because a "court, when presented with conflicting factual averments material to the issues before it, ordinarily may not resolve those issues without a plenary hearing," D.L.M., 437 N.J. Super. at 137, we reverse that portion of the order and remand for discovery as to defendant's good faith efforts to seek comparable employment and C.A.'s changes in child support needs, if any, while attending university away from home. If competing material facts are presented by the parties, a plenary hearing will be necessary to resolve issues of credibility.

## B. Retroactive Modification of Child Support

Pursuant to N.J.S.A. 2A:17-56.23a, defendant is not entitled to retroactive modification of his child support obligations (as distinct from alimony) "except with respect to the period during which there is a pending application for

modification, but only from the date the notice of motion was mailed." See also Burns v. Edwards, 367 N.J. Super. 29, 50 n.4 (App. Div. 2004) ("N.J.S.A. 2A:17-56.23a and 42 U.S.C. § 666(a)(9)(C) prohibit retroactive modification of child support orders except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was filed."). Accordingly, although defendant has presented a prima facie case of changed circumstances as to his child support obligations, any retroactive modification sought can only commence after October 13, 2021 unless the trial court finds, upon remand, that plaintiff had notice of defendant's intention to seek modification at an earlier time, or the parties' agreement clearly contemplated the termination of child support at an earlier date without requiring a motion.

C.   Modification of Alimony and Alimony Arrearages Based upon Changed
Circumstances

Defendant also contends the court erred in failing to terminate his alimony obligation following plaintiff's cohabitation and eventual remarriage. According to defendant, "[t]he cohabitation of a dependent spouse constitutes a changed circumstance requiring further examination of the economic implications of the new relations and its effect on the previously imposed support obligation." While termination of alimony is not the only option

available pursuant to the statute, we agree that plaintiff's uncontroverted cohabitation and subsequent remarriage presented ample prima facie evidence of changed circumstances requiring a review of the alimony award. See Lepis, 83 N.J. at 151. That determination required a plenary hearing as to the date of inception of the cohabitation, the application of the consent order if disputed by the parties, and the economic dependency of the supported spouse upon her cohabitation partner. The court denied defendant's motion without making the requisite findings. It also continually required the parties to resolve the issue of alimony arrearages in mediation despite numerous failed attempts, from 2014 through 2024.

We recognize "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Therefore, it is commonplace for trial courts to provide matrimonial litigants with every opportunity to resolve their issues between themselves. Although mediation is encouraged, particularly in family disputes, it cannot absolve the court from making a decision when the parties are unable to do so themselves. Mediation in 2022 failed to resolve the dispute. The court abused its discretion by requiring the parties to go through mediation again on the same issue where no facts had changed. Moreover, in sending the parties to

mediation, the trial court erroneously relied upon Rule 1:40-5(a), which relates only to custody and parenting time.

Paragraph eleven of the 2014 Consent Order specifically states:

> The parties acknowledge that according to the Probation Department, [defendant's] alimony and child support arrears were $24,736.34 as of May 28, 2014, although they are subject to reduction based upon the reduced support amounts set forth in paragraph 2 herein, as well as adjustment based upon the circumstances in the latter half of 2013. The parties agree that they will attempt to amicably resolve this issue themselves and, if they are unable to do so, will attend mediation . . . .

Ten years later, in 2024, the trial court ordered the parties to reattend mediation in order to reach a settlement regarding the same $24,736.34 in arrears allegedly owed by defendant. The court did not otherwise make any other factual determinations. Although it is well within the Family Part's province to order the parties to attend mediation, the circumstances of this particular case called for the trial court to resolve the dispute. Over the course of this lengthy litigation, starting in 2014, dispute resolution through mediation has consistently proven futile. Indeed, the trial court acknowledged mediation's ineffectiveness in this case, noting the parties had been ordered to attend three times previously.

16

A-3544-23

## D.    Modification of Childcare Expenses

Finally, we agree with defendant, because he had demonstrated a prima facie case of changed circumstances, the court was required to determine whether a reassessment of each party's respective responsibility for childcare expenses was warranted.  Defendant specifically takes issue with three portions of the June 4, 2024 order.  First, defendant argues he should not have to "reimburse [plaintiff] $8,680.00 for [defendant's] share of [T.A.'s] college expenses" because that payment would contravene the court's own order providing for payment of expenses incurred "prior to the emancipation of either child."  Similarly, defendant claims he should not have to reimburse plaintiff $2,000 for T.A.'s unreimbursed medical expenses because he claims T.A. was emancipated prior to the medical procedure that generated the expense.  Lastly, defendant disagrees with the order requiring him to reimburse plaintiff "$4,600 for [C.A.'s] unreimbursed medical expenses." Defendant claims requiring him "to pay 62% of the additional amount the plaintiff claims is owed is not feasible given the family judge's fundamental error in failing to resolve these issues properly through the plenary hearing that should have occurred."

The issue of whether the expenses were incurred before or after emancipation was not addressed by the trial court.  The percentage of C.A.'s

17

expenses defendant may be liable for is directly impacted by any determination as to whether defendant proved changed circumstances sufficient to warrant a downward modification of child support and alimony. We cannot address these issues without the threshold determination as to whether defendant is voluntarily underemployed. Therefore, we do not reach these issues. We remand these decisions to the trial court for a determination as to whether T.A.'s expenses were incurred before or after his emancipation and whether defendant's proportionate share of C.A.'s expenses should be modified because of defendant's reduced income, plaintiff's income at remarriage, or any change in plaintiff's alimony.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division